1  Jason A. Davis (Calif. Bar No. 224250)
2  Davis & Associates
   27281 Las Ramblas, Suite 200
3  Mission Viejo, CA 92691
   Tel 949.310.0817/Fax 949.288.6894
4  E-Mail: Jason@CalGunLawyers.com
5  Attorneys for Plaintiffs OWNER-OPERATOR
   INDEPENDENT DRIVERS ASSOCIATION, INC.,
6  ERIK ROYCE, BRANDON ELIAS, FOLSOM
7  SHOOTING CLUB, INC., and THE CALGUNS
   FOUNDATION, INC.,
8
   C. D. Michel (Calif. Bar No. 144258)
9  Clint Monfort (Calif. Bar No. 255609)
10 Michel & Associates, P.C.
   180 East Ocean Blvd. Suite 200
11 Long Beach, CA 90802
   Tel: 562.216.4444/Fax 562.216.4445
12 E-Mail: CMichel@MichelandAssociates.com
13 Attorneys for Plaintiff NATIONAL RIFLE ASSOCIATION, INC.

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA
### SACRAMENTO DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., ERIK ROYCE, BRANDON ELIAS, FOLSOM SHOOTING CLUB, INC., THE CALGUNS FOUNDATION, INC., and NATIONAL RIFLE ASSOCIATION, INC.,<br><br>Plaintiffs,<br>vs.<br><br>STEVE LINDLEY; THE STATE OF CALIFORNIA; THE CALIFORNIA DEPARTMENT OF JUSTICE; DOES 1-10<br><br>Defendants. | Case No:<br><br>**COMPLAINT, REQUEST FOR INJUNCTIVE AND DECLARATORY RELIEF, AND DEMAND FOR JURY TRIAL**<br><br>36 U.S.C. §40701 *et seq.*,<br>28 U.S.C. §§2201, 2202,<br>42 U.S.C. §§1983, 1988 |

# COMPLAINT

COME NOW Plaintiffs, OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., *et al*. (collectively, "Plaintiffs") by and through their undersigned counsel, and complain of Defendants as follows:

1. This is an action, pursuant to 28 U.S.C. §§2201, 2202 and the Supremacy Clause of the United States Constitution, for declaratory and injunctive relief, seeking compliance by the State of California, the California Department of Justice, and Acting Chief Steve Lindley, in his official capacity as Chief for the Department of Justice's Bureau of Firearms, with 49 U.S.C. §§14501 (c)(1) and 41713 (b)(4), also known as the Federal Aviation Administration Authorization Act of 1994 (the "FAAAA").

2. Specifically, Plaintiffs seek:

   a. A declaration that Penal Code section 12318 is preempted by federal law under the FAAAA and the Supremacy Clause – because those provisions purport to regulate the routes, rates, and services utilized for shipping and delivery and sale of ammunition to a person in California, and what data delivery services must now collect from shippers of such packages;

   b. A declaration that California Penal Code section 12318 is preempted by federal law under the FAAAA and the Supremacy Clause as applied to motor carriers and air/ground intermodal carriers – because the provision purports to regulate from whom and to whom such carriers may make a delivery of ammunition in California; and

   c. A permanent injunction enjoining Defendant from enforcing California Penal Code section 12318 altogether, and from enforcing them against motor carriers and air/ground intermodal carriers and otherwise legal recipients of ammunition.[1]

---

[1] Hereinafter, California Penal Code section 12318 is referred to as the "Challenged Provision." The text of, and all citations to, the Challenged Provision can be found in California Assembly

## THE PARTIES

### [PLAINTIFFS]

3. OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC. ("OOIDA") is a business association of persons and entities who own and/or operate motor vehicles and haul freight.  OOIDA's members include both owner-operator motor vehicle carriers and company drivers.  Owner operators are small business truckers, who own and operate motor carriers, and truckers who own and operate a truck tractor (or tractor trailer combination). They lease their tractor and driving services, and often own their own trailer, to motor carriers, agreeing to move items in interstate commerce for the motor carrier in exchange for specified compensation.  Company drivers move items in interstate commerce as employees of motor carriers who own the truck-tractor and related equipment as well.

4. OOIDA is a not-for-profit corporation incorporated in the State of Missouri, with its headquarters located at 1 N.W. OOIDA Drive, P.O. Box 1000, Grain Valley, Missouri 64029.  OOIDA was founded in 1973 and has almost 160,000 members residing in all fifty (50) states, including as pertinent hereto, California, and in Canada.  OOIDA is acting herein in a representative capacity seeking only declaratory and injunctive relief on behalf of its members, including but not limited to, Plaintiffs ERIK ROYCE and BRANDON ELIAS who operate within the State of California.  The interests OOIDA seeks to protect with this lawsuit are germane to the purposes for which it exists.

5. Plaintiff ERIK ROYCE ("ROYCE"), an individual, is a resident of Newark, California. ROYCE is a driver and employee for an international motor carrier who moves items, including ammunition, in interstate commerce.  ROYCE is a member of OOIDA.  ROYCE is a supporter of and participant in CGF activities and also a member of the NRA.

6. BRANDON ELIAS ("ELIAS"), an individual, is a resident of Chino, California.  ELIAS is a driver and employee for an international motor carrier who moves items, including

---

Bill 962 (2009) (regulating delivery and other transactions involving ammunition.)  A copy of the Chaptered Assembly Bill 962 is attached hereto as **Exhibit A**.

ammunition, in interstate commerce. ELIAS is currently a member of OOIDA. ELIAS is a supporter of and participant in CGF activities and also a member of the NRA.

7. FOLSOM SHOOTING CLUB, INC. ("FSC") is a non-profit corporation that operates the Sacramento Valley Shooting Center, a shooting range for rifles, shotguns, and handguns. FSC buys and sells ammunition for use on the range. Plaintiff is a supporter of and participant in CGF activities and a member of the NRA.

8. Plaintiff THE CALGUNS FOUNDATION, INC. ("CGF") is a non-profit organization incorporated under the laws of California with its principal place of business in Redwood City, California. The purposes of CGF include supporting the California firearms community by promoting education for all stakeholders about California and federal firearm and ammunition laws, rights and privileges, and defending and protecting the civil rights of California gun owners. CGF represents these members and supporters, which include California firearm retailers and consumers who wish to sell and purchase ammunition over the internet. CGF brings this action on behalf of itself and its supporters, who possess all the indicia of membership.

9. Plaintiff NATIONAL RIFLE ASSOCIATION, INC. ("NRA") is a non-profit association incorporated under the laws of New York, with its principal place of business in Fairfax, Virginia. The NRA has a membership of approximately 4 million persons. NRA members reside in the State of California. The purposes of the NRA include protection of the right of citizens to have firearms and ammunition for the lawful defense of their families, persons, and property, and to promote public safety and law and order. The NRA brings this action on behalf of itself and its members who wish to purchase ammunition over the internet, some of whom reside California.

**[DEFENDANTS]**

10. Defendant STEVE LINDLEY ("LINDLEY") is the Acting Chief of the California Department of Justice Bureau of Firearms, and as such is responsible for formulating, executing and administering the State of California's laws, customs, practices, and policies at issue in this lawsuit; and will in fact enforce the challenged laws, customs, and practices

against Plaintiffs upon their effective date.

11. Defendant the STATE OF CALIFORNIA ("STATE") IS A SOVERIGN STATE ADMITTED TO THE United States under section 3, article IV of the United States Constitution.

12. Defendant THE CALIFORNIA DEPARTMENT OF JUSTICE ("DOJ") is a lawfully constituted executive agency of California responsible, in part, for administering the Challenged Provision.  It is charged by article V, section 14 of the California Constitution with the duty to inform the general public, and to supervise and instruct local prosecutors and law enforcement agencies, regarding the meaning of the laws of the STATE, including the Challenged Provision, and ensure the fair, uniform and consistent enforcement of those laws throughout the state.

13. Defendants LINDLEY, STATE, and DOJ (collectively "DEFENDANTS") are responsible for administering the Challenged Provision and will be enforcing the Challenged Provision under the color of law within the meaning of 42 U.S.C. §1983 when they become effective February 1, 2011.

14. The true names or capacities, whether individual, corporate, associate, or otherwise of the Defendants named herein as DOE are presently unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names.  Plaintiffs pray for leave to amend this Complaint to show the true names or capacities of said Defendants if and when the same have been finally determined.

**JURISDICTION AND VENUE**

15. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1337(a), 2201, 2202 and 42 U.S.C. §1983.

16. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

**GENERAL ALLEGATIONS**

17. The shipping industry is an essential component of the American economy.  Due to the popularity of the Internet, home shopping networks, mail-order catalogues, and various forms of "e-commerce," a significant portion of the retail transactions across the United States now

takes place via direct sales transactions in which businesses and consumers communicate through the Internet, telephone, facsimile, or mail.  A corresponding portion of the business of cargo carriers – including OOIDA members– is devoted to transporting and delivering the goods purchased in such transactions.  These direct sales operations depend on interstate cargo carriers to transport and deliver the goods they sell; the carriers, in turn, depend on these operations for a significant portion of their business.

*Current Federal Labeling Requirement for Ammunition*

18. Generally, federal requirements for ground shipping of what may be deemed ammunition in retail quantities require only that the packages be marked ORM-D.  49 C.F.R. §§100-185.
19. ORM-D is a marking for mail or shipping in the United States that identifies "Other Regulated Materials-Domestic."
20. Packages required to bear the ORM-D mark also include: aerosol cans, automotive batteries, perfumes, lighters, beer, and drain openers.
21.  Materials marked ORM-D and shipped by surface transportation do not require hazardous shipping papers, simply an ORM-D Consumer Commodity marking on the box.  There is no requirement to identify which type of ORM-D product is contained in the package.   More specifically, other than bearing the ORM-D mark, there is no federal requirement that a package being shipped by surface transportation and containing ammunition be marked with any identifier confirming that the package contains ammunition, *handgun ammunition*, or identifying the caliber of ammunition that is contained within the package.

*Second Amendment Applies to Ammunition*

22. Second Amendment guarantees individuals a fundamental right to possess handguns and ammunition in the home.  Corollary to that is the right to acquire handguns and ammunition.

*California's Handgun Ammunition Delivery Restrictions*

23. In 2009, California passed and Governor Schwarzenegger signed into law California Assembly Bill 962, which regulates the sale of *handgun ammunition*.
24. California defines *handgun ammunition* for the purposes of this section as "ammunition principally for use in pistols, revolvers, and other firearms capable of being concealed upon

the person . . . notwithstanding that the ammunition may also be used in some rifles" and excluding ammunition designed and intended to be used in an "antique firearm" and blanks. (Cal. Pen. §§ 12318 (b)(2) and 12323 (a).)

25. Specifically, California Penal Code section 12318 (a) provides: "Commencing February 1, 2011, the delivery or transfer of ownership *of handgun ammunition* may only occur in face-to-face transactions with the deliverer or transferor being provided *bona fide evidence of identity* from the purchaser or other transferee.  A violation of this section is a misdemeanor." (Emphasis added.)

26. For purposes of Penal Code section 12318, *bona fide evidence of identity* means a document issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to a motor vehicle operator's license, state identification card, identification card issued to a member of the Armed Forces, or other form of identification that bears the name, date of birth, or description, and picture of the person.  (Cal. Pen. § 12318 (b)(1).)[2]

*Exemptions to California's Handgun Ammunition Delivery Restrictions*

27. California's *handgun ammunition* delivery restrictions do not apply to or affect the deliveries, transfers, or sales of, *handgun ammunition* to any of the following:

    a. Authorized law enforcement representatives of cities, counties, cities and counties, or state and federal governments for exclusive use by those government agencies if, prior to the delivery, transfer, or sale of the handgun ammunition, written authorization from the head of the agency employing the purchaser or transferee, is obtained identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency

---

[2] Because *bona fide evidence of identity* requires a "date of birth" and "picture of the person," corporations, limited liability companies, and other business forms are prohibited from providing *bona fide evidence of identity* and therefore prohibited from obtaining possession or ownership *handgun ammunition* pursuant to Penal Code section 12318(a).

employing the individual.  (Cal. Pen. §12318(c)(1).)

b. Certain sworn peace officers authorized to carry a firearm in the course and scope of their duties.  (Cal. Pen. §12318(c)(2).)

c. Importers and manufacturers of *handgun ammunition* or firearms licensed to engage in business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.  (Cal. Pen. §12318(c)(3).)

d. Persons who are on the centralized list maintained by the Department of Justice pursuant to Section 12083, for which there is no government issued license or other means of substantiating.  (Cal. Pen. §12318(c)(4).)  Further, this list not published or otherwise available to the public.

e. Persons whose licensed premises are outside this state who are licensed as dealers or collectors of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.  (Cal. Pen. §12318(c)(5).)

f. Persons licensed as collectors of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto whose licensed premises are within this state who has a current certificate of eligibility issued to him or her by the Department of Justice pursuant to Section 12071.  (Cal. Pen. §12318(c)(6).)

g. A *handgun ammunition vendor*, for which there is no government license or other method of substantiating.   (Cal. Pen. §§12060(c), 12318(b)(3) and (c)(7).)

h. A consultant-evaluator, as defined in subdivision (s) of Section 12001, for which there is no government issued license or other method of substantiating.  (Cal. Pen. §12318(c)(8).)

*Federal Aviation Administration Authorization Act of 1994*

*Federal Authority Over Interstate Transportation*

28. The United States congress enacted the FAAAA, which became effective January 1, 1995.

The FAAAA provides in relevant part that "a State . . . *may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service*" of any motor carrier, or intermodal air/ground carrier with respect to the transportation of property.  49 U.S.C. §14501 (c)(1) (relating to motor carriers)(emphasis added), 49 U.S.C. § 41713(b)(4)(A) (relating to air and intermodal air/ground carriers)(emphasis added).

29. In enacting the FAAAA, Congress expressly found that the regulation of interstate transportation of property by the states had "imposed an unreasonable burden on interstate commerce; [and] impeded the free flow of trade, traffic, and transportation of interstate commerce."  FAAAA, Pub. L. No. 103-305, tit. VI, 601 (a)(1), 108 Stat. 1569, 1605 (1994).

30. Through the FAAAA, Congress sought to ensure that interstate carriers are able to provide service subject exclusively to a uniform body of federal law, and not by a "patchwork" of individual states' laws and regulations.  H.R. Conf. Rep. No. 103-677, § 601, at 87 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1759.  Congress thereby intended to remove obstacles to "national and regional carriers attempting to conduct a standard way of doing business."  *Id.*  Congress specifically identified restrictions on "types of commodities carried" as one of the forms of state regulation eliminated by the FAAAA.  *Id.* at 86, *reprinted in* 1994 U.S.C.C.A.N. at 1758.

31. In interpreting the FAAAA's applicability to a state law similar to the Challenged Provision, the U.S. Supreme Court unanimously held that the state law was preempted by federal law; in regulating delivery service procedures, the recipient-verification provision focused on carrier routes, rates, or services, thereby creating a direct connection with motor carrier routes, rates, or services that had a significant and adverse impact on the congressional goal of precluding state regulation in lieu of competitive market forces.  Rowe v. N.H. Motor Transp. Ass'n (2008) 552 U.S. 364.

32. The broad preemptive scope of the FAAAA precludes the enactment and enforcement of state laws related to carriers' routes, rates, or services.  California Penal Code section 12318 violates that mandate because it expressly refers to, and indeed regulates, the manner in

which carriers must operate in order to lawfully be utilized to transport California-bound packages containing ammunition products. Likewise, California Penal Code section 12318 violates that mandate because it *expressly refers* to, and indeed regulates, the manner in which carriers must operate to avoid civil and criminal liability in transporting California-bound packages containing ammunition products.

33. Based on its express terms, the Challenged Provision also has a significant effect on carriers' routes, rates, or services. In order to comply with the Challenged Provision, carriers have to devise and implement systems and procedures to:

   a. Determine whether the package is California bound;
   b. Determine what calibers of ammunition are deemed *handgun ammunition* under California law;
   c. Implement policies and procedures requiring all California bound packages containing *handgun ammunition* be identified as containing *handgun ammunition*.
   d. Implement and act on policies and procedures to determine whether the recipient of packages containing *handgun ammunition* is an exempted person identified in Paragraph 27;
   e. For such exempted persons, receive that information and keep that information tied to the package's records to substantiate that the delivery was made to an exempted person;
   f. Perform an identification check, when required for such packages;
   g. Obtain a signature from the addressee of such packages; and
   h. Make provisions for any such packages that the carriers determine cannot lawfully be delivered under Penal Code section 12318.

34. As Congress expressly intended, *see* H.R. Conf. Rep. No. 103-677, at 87, *reprinted in* 1994 U.S.C.C.A.N. at 1759, motor and intermodal carriers of property rely on the efficiencies of uniform procedures to provide their transportation and delivery routes, rates, or services within and among the 50 States. Carriers' operations are engineered to provide speed, reliability, and efficiency. In large part, they depend on uniformity – that is, repetition of the

same processes and procedures for all packages regardless of their destination.  Such uniformity allows superior, reliable routes, rates, or services to shippers and their consignees, and is essential in a highly competitive industry with numerous competitors, including the United States Postal Service.

35. In order to comply with the Challenged Provision, and lawfully be utilized by *handgun ammunition* buyers and sellers, carriers are prevented from employing their uniform procedures for California-bound packages.  This disruption in uniformity does and will have a significant effect on the manner, timeliness, and effectiveness of carriers' routes, rates, or services, and on carriers' routes and prices.

36. For example, California Penal Code section 12318 requires that California-bound packages containing handgun ammunition products be delivered by transporting a package to the particular person at that address, not to a recipient's address.  Even where carriers offer a service to obtain a delivery signature, typically that signature can be obtained from any person (or, where specified, any adult) at that delivery address.  Thus, carriers routinely deliver signature-required packages to persons such as business receptionist, mail room attendants, and stay-at-home parents.  Requiring delivery of such packages only to the specific addressee would preclude such routine practices, and would force carriers to alter their manner of delivering packages.   Delivery drivers will have to spend extra time at each stop while attempting to locate the addressee.  The requirement places burdens on carriers comparable to those faced by process servers – burdens that high-volume cargo carriers are ill-equipped to handle.  This requirement also has a significant effect on carriers' routes, by forcing them to reroute packages back to the carriers' facilities, make multiple delivery attempts, and, in some cases, reroute a package back to the sender (if the addressee cannot be located), provide identification, or substantiate that they fall within an exemption.

37. Similarly, to avoid liability under Penal Code section 12318, carriers must create procedures to identify, segregate, and separately process California-bound packages containing handgun ammunition products.  Potentially *every* California-bound package has to be inspected for markings indicating a handgun ammunition product.  Every package so identified must be

researched to determine the potential exemption status of the addressee.  Carriers must create procedures for packages that cannot lawfully be delivered to the addressee, or which the addressees are not available to sign for.

38. Implementation of these procedures, to avoid liability under Penal Code section 12318, will have a significant effect on carriers' cost (including labor), and therefore relates to carriers' rates.  For example, deliveries can be made to federally licensed collectors without *bona fide evidence of identity*, but the carrier must obtain proof of the person's valid collector's license and valid certificate of eligibility in order for the exemption to apply; and will have to change their routes to adjust for delay and modify services to train their drivers on how to identify such persons.

39. Implementation of these procedures will also have the effect of excluding those who cannot provide evidence of their exempt status, such as Plaintiff FSC and other ammunition vendors, from deliveries.

40. Failure to create and implement procedures creates criminal liability for OOIDA carriers and members drivers involved with consolidated shipments.  For example, in Less-than-Truckload  ("LTL") shipments, LTL carriers collect freight from various shippers and consolidate that freight onto enclosed trailers for linehaul to the delivering terminal or to a hub terminal where the freight will be further sorted and consolidated for additional linehauls or direct shipment to end-recipients, such as retail stores.   Without procedures in place identifying the consolidated freight as containing *handgun ammunition*, owner/operators and/or drivers will be criminally liable for deliveries in violation of Penal Code section 12318.  *Handgun ammunition* will have to be separately identified, segregated, and special Penal Code section 12318 procedures implemented and complied with in order to avoid criminal liability – disrupting their rates, routes, and services.

41. Faced with the burden and disruptions on their uniform routes, rates, or services imposed by the Challenged Provision, some carriers may terminate all deliveries of *handgun ammunition* products to California.  The resulting termination of that service plainly is a significant effect on carriers' routes, rates, or services.

42. Since carriers have to undertake special procedures for deliveries to California, the Challenged Provision has the potential to slow down the delivery of *all* packages destined for California – not merely those packages that are marked as or known to contain handgun ammunition products. The myriad efficiencies that come from a uniform system of delivery, and the attendant benefits to consumers, will be lost.

43. FSC is a corporation and, as such, cannot produce *bona fide identification* as described and required by the Challenged Provision; nor is there a method available to substantiate that it is exempt as a *handgun ammunition vendor* under the Challenged Provision. If the Challenged Provision is not declared preempted, FSC will no longer be able to sell *handgun ammunition*, as it cannot take delivery of *handgun ammunition*.

44. Under the provisions of Penal Code section 12318, OOIDA members cannot deliver to FSC or others similarly situated, including NRA and CGF members, since they cannot determine with certainty that they are *handgun ammunition vendors* and therefore valid recipients *of handgun ammunition* – even though FSC and other similarly situated claim to be exempt from the Challenged Provision as *handgun ammunition vendors*; thus, the Challenged Provision will impact carriers' rates by lowering their revenue.

**COUNT ONE – SUPREMACY CLAUSE, 42 U.S.C. §1983**

**(FAAAA PREEMPTION)**

45. Plaintiffs incorporate by reference all of the foregoing paragraphs as though set forth fully herein.

46. California Penal Code section 12318 (a) is directly connected with motor carrier routes, rates, or services and therefore has a significant and adverse impact on the congressional goal of precluding state regulation in lieu of competitive market forces.

47. The United States Constitution gives Congress the power to enact the "Supreme Law of the Land; and the Judges in every State shall be bound thereby, and any Thing in the Constitution or Laws of any State to the Country notwithstanding." U.S. Const. art. VI, § 3, cl. 2.

48. An actual controversy exists among the parties in that: 1) carriers must modify their routes,

rates or services to comply with the requirements of California Penal Code section 12318, and 2) the Challenged Provision will result in the loss of business from the compliant businesses, among others, or criminal and civil penalties if they fail to comply with the obligations directly and indirectly imposed by California Penal Code section 12318.

49. The threat that this Challenged Provision will be enforced against the Plaintiffs and other carriers is an irreparable harm that makes injunctive relief appropriate.  In addition to the imminent enforcement of the Challenged Provision, the unconstitutionality itself reinforces the irreparable harm carriers and sellers face.

50. The harm is irreparable for the additional reason that the Eleventh Amendment to the United States Constitution bars an award for retrospective monetary damages against the State or the individual defendant acting in his official capacity.

51. Plaintiffs are entitled to injunctive relief against enforcement of the Challenged Provision because themselves and their members are and will continue to suffer irreparable harm from enforcement of the Challenged Provision - damaging Plaintiffs in violation of 42 U.S.C §1983.

**COUNT TWO – 28 U.S.C. §§ 2201, 2202, 42 U.S.C. §1983**
**(DECLARATORY & INJUNCTIVE RELIEF)**

52. Plaintiffs incorporate by reference all of the foregoing paragraphs as though set forth fully herein.

53. Plaintiffs bring this cause of action pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201, 2202, to obtain a declaration of their rights and their members rights with respect to the Challenged Provision

54. As alleged above, an actual controversy has arisen and now exists within the meaning of 28 U.S.C. § 2201, as to whether the Challenged Provision is preempted by the FAAAA pursuant to the Supremacy Clause of the United States Constitution.

55. The Court has the power to adjudicate the rights of the parties with respect to this controversy and should grant declaratory relief under 28 U.S.C. § 2201.

**PRAYER**

WHEREFORE, Plaintiffs request that judgment be entered in their favor and against Defendants as follows:

1. An order permanently enjoining Defendants, their officers, agents, servants, employees, and all persons in active concert or participation with them who receive actual notice of the injunction, from enforcing California Penal Code section 12318;
2. Costs of suit, including attorney's fees and costs pursuant to 42 U.S.C. §1988 or as otherwise permitted and appropriate by state or federal law;
3. Declaratory relief consistent with the injunction;
4. Any other further relief as the Court deems just and appropriate.

Date: July 28, 2010,                                Respectfully submitted,

Michel & Associates, P.C                            Davis & Associates

/s/ C. D. Michel (as authorized on 07/28/10)        /s/ Jason A. Davis
C. D. Michel                                        Jason A. Davis
cmichel@michelandassociatees.com                    Jason@CalGunLawyers.com
Attorneys for plaintiff                             Attorneys for plaintiffs
NATIONAL RIFLE ASSOCIATION, INC.                    OWNER-OPERATOR INDEPENDENT
                                                    DRIVERS ASSOCIATION, ERIK
                                                    ROYCE, BRANDON ELIAS, FOLSOM
                                                    SHOOTING CLUB, INC., and THE
                                                    CALGUNS FOUNDATION, INC.