1   EDMUND G. BROWN JR., State Bar No. 37100
    Attorney General of California
2   JONATHAN RENNER, State Bar No. 187138
    Senior Assistant Attorney General
3   PETER A. KRAUSE, State Bar No. 185098
    Deputy Attorney General
4    1300 I Street, Suite 125
     P.O. Box 944255
5    Sacramento, CA 94244-2550
     Telephone: (916) 324-5328
6    Fax: (916) 324-8835
     E-mail: Peter.Krause@doj.ca.gov
7   *Attorneys for Defendants the State Of California, the*
    *California Department Of Justice, and Acting*
8   *Bureau Chief Steve Lindley*

9

10                  IN THE UNITED STATES DISTRICT COURT

11                 FOR THE EASTERN DISTRICT OF CALIFORNIA

12                          SACRAMENTO DIVISION

13

14  | **OWNER-OPERATOR INDEPENDENT** | Case No. 10-CV-02010 -MCE-KJM |
    | **DRIVERS ASSOCIATION, INC., ERIK** | |
15  | **ROYCE, BRANDON ELIAS, FOLSOM** | **(1) MEMORANDUM OF POINTS AND** |
    | **SHOOTING CLUB, INC., THE CALGUNS** | **AUTHORITIES IN SUPPORT OF** |
16  | **FOUNDATION, INC., and NATIONAL** | **DEFENDANTS' MOTION TO** |
    | **RIFLE ASSOCIATION, INC.,** | **DISMISS, OR, IN THE** |
17  | | **ALTERNATIVE, TO STAY** |
    | | **ACTION; and** |
18  | Plaintiffs, | |
    | | **(2) DECLARATION OF PETER A.** |
19  | v. | **KRAUSE IN SUPPORT THEREOF** |
20  | **STEVE LINDLEY; THE STATE OF** | Date:  November 18, 2010 |
    | **CALIFORNIA; THE CALIFORNIA** | Time:  2:00 p.m. |
21  | **DEPARTMENT OF JUSTICE; and DOES** | Ctrm:  No. 7 - 14th Floor |
    | **1-10,** | Judge: Hon. Morrison C. England, Jr. |
22  | | Trial Date: None |
    | | Action Filed:  7/28/2010 |
23  | Defendants. | |
    | | [Request for Judicial Notice Lodged |
24  | | Concurrently Herewith] |

25

26

27

28

# TABLE OF CONTENTS

**Page**

Summary of argument ........................................................................................................ 1

Allegations of the complaint ........................................................................................... 1

Applicable legal standards .............................................................................................. 3

Argument .......................................................................................................................... 4

I.     Plaintiffs have not alleged a ripe controversy. ........................................... 4

II.    Plaintiffs' claims are barred by sovereign immunity. ............................ 6

     A.    The Eleventh Amendment precludes plaintiffs' claims against the State of California and the California Department of Justice. .................... 6

     B.    Steve Lindley, in his official capacity as acting bureau chief for the California Department of Justice, also is immune from suit under the Eleventh Amendment. ...................................................................... 6

III.   Plaintiffs the Calguns Foundation, Inc. and the National Rifle Association, Inc. lack standing. ........................................................................................ 9

IV.   Plaintiff Folsom Shooting Club, Inc. also lacks standing. .................................... 11

V.    Plaintiffs' preemption challenge fails to state a claim upon which relief can be granted. ................................................................................................ 11

VI.   If the Court does not dismiss the complaint in its entirety, it should stay the action pending resolution of *Parker v. State of California, et al.* ......................... 15

Conclusion ....................................................................................................................... 17

# TABLE OF AUTHORITIES

**Page**

CASES

*Abdu-Brisson v. Delta Air Lines, Inc.*,
128 F.3d 77 (2d Cir. 1997)..................................................................... 13

*Ace Auto Body & Towing, Ltd. v. City of New York*,
171 F.3d 765 (2d Cir. 1999)............................................................. 14, 15

*Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*,
300 U.S. 227 (1937) ................................................................................ 4

*Alessi v. Raybestos-Manhattan, Inc.*,
451 U.S. 504 (1981) .............................................................................. 11

*Allen v. Wright*,
468 U.S. 737 (1984) .............................................................................. 11

*Almond Hill Sch. v. U.S. Dept. of Agric.*,
768 F.2d 1030 (9th Cir. 1985)................................................................. 6

*American Airlines, Inc. v. Wolens*,
513 U.S. 219 (1995) .............................................................................. 14

*Atascadero State Hosp. v. Scanlon*,
473 U.S. 234 (1985) ................................................................................ 6

*Balistreri v. Pacifica Police Dep't*,
901 F.2d 696 (9th Cir. 1990)................................................................... 3

*Bras v. California Pub. Utilities Comm'n*,
59 F.3d 869 (9th Cir. 1995)................................................................... 11

*California Div. of Labor Standards Enforcement v. Dillingham Constr. N.A., Inc.*,
519 U.S. 316 (1997)............................................................................... 12

*Cardenas v. Anzai*,
311 F.3d 929 (9th Cir. 2002)................................................................... 4

*Cipollone v. Liggett Group, Inc.*,
505 U.S. 504 (1992)............................................................................... 12

*CMAX, Inc. v. Hall*,
300 F.2d 265 (9th Cir. 1962)................................................................. 16

*Conference of Fed. Sav. & Loan Assn's v. Stein*,
604 F.2d 1256 (9th Cir. 1979)................................................................. 4

ii

# TABLE OF AUTHORITIES
### (continued)

Page

*De Buono v. NYSA-ILA Med. & Clinical Servs. Fund,*
520 U.S. 806 (1997) ............................................................................... 12

*Ex Parte Young,*
209 U.S. 123 (1908) .......................................................................... 7, 8, 9

*Gibbons v. Ogden,*
22 U.S. 1 (1824) .................................................................................... 11

*Hishon v. King & Spalding,*
467 U.S. 69 (1984) .................................................................................. 3

*Hunt v. Washington State Apple Adver. Comm'n,*
432 U.S. 333 (1977) ............................................................................ 9, 10

*In re Harleston,*
331 F.3d 699 (9th Cir. 2003) ................................................................... 6

*Kelley v. United States,*
69 F.3d 1503 (10th Cir. 1995) .......................................................... 12, 13

*Kokkonen v. Guardian Life Ins. Co. of Am.,*
511 U.S. 375 (1944) ................................................................................ 3

*L.A. County Bar Ass'n v. Eu,*
979 F.2d 697 (9th Cir. 1992) ................................................................... 7

*Landis v. N. Am. Co.,*
299 U.S. 248 (1936) .............................................................................. 16

*Lockyer v. Miran Corp.,*
398 F.3d 1098 (9th Cir. 2005) ............................................................... 16

*Long v. Van de Kamp,*
772 F. Supp. 1141 (C.D. Cal. 1991) ......................................................... 8

*Long v. Van de Kamp,*
961 F.2d 151 (9th Cir. 1992) ................................................................. 8, 9

*Lorillard Tobacco Co. v. Reilly,*
533 U.S. 525 (2001) .............................................................................. 12

*Love v. United States,*
915 F.2d 1242 (9th Cir. 1989) ................................................................. 3

1

## TABLE OF AUTHORITIES
### (continued)

2

Page

3   *Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) .................................................................................. 11

4

5   *MedImmune, Inc. v. Genentech, Inc.,*
    549 U.S. 118 (2007) ................................................................................... 4

6

7   *Medtronic Inc. v. Lohr,*
    518 U.S. 470 (1996) .................................................................................. 12

8   *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent,*
    466 U.S. 789 (1984) .................................................................................. 11

9

10  *Morales v. TWA,*
    504 U.S. 374 (1992) .................................................................................. 14

11

12  *N Star Int'l v. Arizona Corp. Comm'n,*
    720 F.2d 578 (9th Cir. 1983) ...................................................................... 3

13  *Pacific Northwest Generating Coop. v. Brown,*
    38 F.3d 1058 (9th Cir. 1994) ..................................................................... 10

14

15  *Papasan v. Allain,*
    478 U.S. 265 (1986) .................................................................................... 6

16  *Pennhurst State Sch. & Hosp. v. Halderman,*
    465 U.S. 89 (1984) ................................................................................... 6, 7

17

18  *Quern v. Jordan,*
    440 U.S. 332 (1979) .................................................................................... 6

19

20  *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S.*
    *Department of Agriculture,*
    415 F.3d 1078 (9th Cir. 2005) ................................................................... 10

21

22  *Richmond Boro Gun Club, Inc. v. City of New York,*
    97 F.3d 681 (2d Cir. 1996) ........................................................................ 12

23

24  *Rowe v. New Hampshire Motor Transport Ass'n,*
    552 U.S. 364 (2008) ............................................................................. 14, 15

25  *S. Pac. Transp. Co. v. Brown,*
    651 F.2d 613 (9th Cir. 1981) ....................................................................... 8

26

27  *Safe Air for Everyone v. Meyer,*
    373 F.3d 1035 (9th Cir. 1994) ..................................................................... 3

28

iv

# TABLE OF AUTHORITIES
## (continued)

Page

*San Diego County Gun Rights Comm'n v. Reno,*
   98 F.3d 1121 (9th Cir. 1996)............................................................................ 5

*Seminole Tribe of Florida v. Florida,*
   517 U.S. 44 (1996) ......................................................................................... 6

*Snoeck v. Brussa,*
   153 F.3d 984 (9th Cir. 1998)....................................................................... 7, 9

*Thomas v. Union Carbide Agric. Prods. Co.,*
   473 U.S. 568 (1985) ..................................................................................... 4, 5

*Thornhill Publ'g Co. v. Gen. Tel. & Elecs.,*
   594 F.2d 730 (9th Cir. 1979).......................................................................... 3

*Toilet Goods Ass'n v. Gardner,*
   387 U.S. 158 (1967) ....................................................................................... 5

*United States v. Salerno,*
   481 U.S. 739 (1987) ..................................................................................... 11

*W. Mining Council v. Watt,*
   643 F.2d 618,624 (9th Cir. 1981)................................................................. 3, 7

*Wilbur v. Locke,*
   423 F.3d 1101 (9th Cir. 2005)........................................................................ 7

STATUTES

28 U.S.C. § 2201(a) ........................................................................................ 4

49 U.S.C. § 14501 ..................................................................................... 13,15

California Penal Code § 12318 ................................................................... passim

OTHER AUTHORITIES

U.S. Const. art. VI, cl. 2................................................................................ 11

U.S. Const. amend. XI, ........................................................................... passim

U.S. Const. amend. XIV .............................................................................. 16

H.R. Conf. Rep. No. 103-677 (1994) ............................................................. 13

Fed. Rule Civ. Proc. 12(b)(1), 12(b)(6) .......................................................... 3

v

## SUMMARY OF ARGUMENT

In this action plaintiffs seek to invalidate a statute that will, once it goes into effect, require transactions in handgun ammunition to occur in person. They allege that the challenged law is preempted on its face by a federal statute that governs the rates, routes, and services of motor carriers.

Federal courts are courts of limited jurisdiction. Article III does not grant a federal court jurisdiction to consider this action because the issue presented is not ripe for review. Until the challenged statute takes effect in February 2011 and there is a legitimate threat of enforcement, the law's application to plaintiffs, and any harm that they might suffer, is purely speculative. To compound matters, several plaintiffs lack standing to sue. Furthermore, neither a state nor its instrumentalities may be sued in federal court; hence plaintiffs' claims are barred by the Eleventh Amendment. And even if plaintiffs could overcome these hurdles, they cannot allege facts sufficient to state a claim for relief.

Should any portion of plaintiffs' claims survive dismissal, the Court should exercise its discretion to stay the action to allow a related state court case to proceed to judgment. For these reasons, and as more fully explained below, the State respectfully requests that the Court grant this Motion.

## ALLEGATIONS OF THE COMPLAINT

Plaintiffs[1] include individuals and corporations who own and operate motor vehicles and haul freight in interstate commerce, as well as a shooting club and firearms associations whose members purchase and sell ammunition over the internet. (¶¶ 3-9.[2]) Defendants are Steve Lindley, Acting Chief of the Bureau of Firearms at the California Department of Justice, as well as the State of California, and the California Department of Justice itself (collectively, the "State"). (¶¶ 10-12.)

---

[1]   Plaintiffs are the Owner-Operator Independent Drivers Association, Inc., Erik Royce, Brandon Elias, Folsom Shooting Club, Inc., the Calguns Foundation, Inc., and National Rifle Association, Inc. They are referred to collectively as "Plaintiffs."

[2]   All citations using only the paragraph symbol are to the complaint filed July 28, 2010.

1

1    In 2009, the California Legislature enacted, and the Governor signed, Assembly Bill

2  (AB) 962, a portion of which is the subject of the present complaint. (¶ 23.) AB 962

3  generally regulates the purchase, sale, display, and delivery of handgun ammunition, as

4  defined in the act. (¶¶ 23-24.) The statute at issue in this case is California Penal Code

5  section 12318, subdivision (a) of which provides:

6    Commencing February 1, 2011, the delivery or transfer of ownership of
       handgun ammunition may only occur in a face-to-face transaction with the
7      deliverer or transferor being provided bona fide evidence of identity from the
       purchaser or other transferee. A violation of this section is a misdemeanor.
8

9  Subdivision (c) of section 12318 provides that subdivision (a) shall not apply to or affect

10  deliveries, transfers, or sales of handgun ammunition to law enforcement representatives,

11  sworn peace officers, importers and manufacturers of handgun ammunition or firearms, or

12  certain other individuals and businesses. (¶ 27.)

13    Plaintiffs contend that section 12318 is preempted on its face by the Federal

14  Aviation Administration Authorization Act of 1994, ("FAAAA"), Pub. L. No. 103-305,

15  § 601(c), 108 Stat. 1569, 1606, 49 U.S.C. §§ 14501-14505, which governs the prices,

16  routes, or services of motor carriers transporting property. (¶ 28.) Specifically, Plaintiffs

17  contend that section 12318's in-person transaction requirement, which does not take effect

18  until February 1, 2011, will violate the FAAAA because it purportedly regulates the

19  manner in which carriers must operate, and also will have a significant effect on carriers'

20  routes, rates or services. (¶¶ 32-33.)

21    Plaintiffs allege that when section 12318 goes into effect next year, the motor carrier

22  plaintiffs will have to devise and implement systems and procedures to (1) determine

23  whether a package is bound for California, (2) determine what calibers of ammunition are

24  handgun ammunition, (3) implement procedures for California-bound packages with

25  handgun ammunition be identified as such, (4) implement policies to determine whether

26  the recipient is subject to one of the exemptions identified in section 12318(c),

27  (5) implement certain records retention procedures, (6) perform an identification check,

28  (7) obtain a signature, and (8) return packages that cannot lawfully be delivered. (¶ 33.)

2

1       Plaintiffs contend that implementing the foregoing measures will preclude them

2   from employing their uniform procedures for California-bound packages, which will have

3   a significant effect on their rates, routes, and services. (¶ 35.) They further allege that

4   failure to create and implement these procedures creates potential criminal liability for

5   plaintiff motor carriers. (¶¶ 38-40.) The State disputes Plaintiffs' allegations.

6   <div align="center">**APPLICABLE LEGAL STANDARDS**</div>

7       Rule 12(b)(1) allows a party to raise the defense that a court lacks jurisdiction over

8   the subject matter of a claim. "A motion to dismiss for lack of subject matter jurisdiction

9   may either attack the allegations of the complaint or may be made as a 'speaking motion'

10  attacking the existence of subject matter jurisdiction in fact." *Thornhill Publ'g Co. v. Gen.*

11  *Tel. & Elecs.*, 594 F.2d 730, 733 (9th Cir. 1979). The instant Rule 12(b)(1) motion

12  attacks the allegations of the complaint, so the district court must accept the allegations of

13  the complaint as true. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir.

14  1994). But the burden of proof on a Rule 12(b)(1) motion is on the party seeking to

15  invoke the court's subject matter jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*,

16  511 U.S. 375, 377 (1944); *Thornhill*, 594 F.2d at 733.

17      A motion to dismiss brought under Rule 12(b)(6), on the other hand, tests the legal

18  sufficiency of the complaint. *N Star Int'l v. Arizona Corp. Comm'n*, 720 F.2d 578, 581

19  (9th Cir. 1983). Dismissal of the complaint "can be based on the lack of a cognizable

20  legal theory or the absence of sufficient facts alleged under a cognizable legal theory."

21  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In considering a

22  motion to dismiss for failure to state a claim, the court accepts as true all well pleaded

23  material allegations in the complaint. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984);

24  *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). But, the Court need not

25  accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory

26  legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643

27  F.2d 618,624 (9th Cir. 1981).

28

<div align="center">3</div>

1  <center>**ARGUMENT**</center>

2  **I.   PLAINTIFFS HAVE NOT ALLEGED A RIPE CONTROVERSY.**

3  A district court's role is neither to issue advisory opinions nor to declare rights in

4  hypothetical cases, but to adjudicate live cases or controversies consistent with the powers

5  granted the judiciary in Article III of the Constitution.  Although Plaintiffs have nearly

6  sketched the abstract outlines of a justiciable dispute in their complaint, the statute under

7  attack, California Penal Code section 12318, does not go into effect until February 1, 2011.

8  Hence, the Court cannot know precisely how the law might apply to, or be enforced

9  against, these Plaintiffs.  Because the allegations plead in the complaint are based not on

10  fact, but on speculation, the issues presented are not ripe for adjudication by this Court.

11  The Declaratory Judgment Act, 28 U.S.C. § 2201(a), provides in pertinent part that

12  in "a case of actual controversy within its jurisdiction, . . . any court of the United States,

13  upon the filing of any appropriate pleading, may declare the rights and other legal

14  relations of any interested party seeking such declaration."  The "actual controversy"

15  requirement of § 2201 refers to the type of cases and controversies that are justiciable

16  under Article III; i.e., cases involving a substantial controversy between parties having

17  adverse interests of sufficient immediacy and reality.  *Aetna Life Ins. Co. of Hartford,*

18  *Conn. v. Haworth*, 300 U.S. 227, 240 (1937); *MedImmune, Inc. v. Genentech, Inc.*, 549

19  U.S. 118, 125-126 (2007).  A declaratory judgment action must resolve an existing

20  conflict and not merely raise a possible defense.  *Conference of Fed. Sav. & Loan Assn's v.*

21  *Stein*, 604 F.2d 1256, 1259 (9th Cir. 1979).

22  The basic rationale of the ripeness doctrine "is to prevent the courts, through

23  premature adjudication, from entangling themselves in abstract disagreements."  *Thomas v.*

24  *Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580 (1985).  The central concern is to

25  avoid making decisions that depend on uncertain or contingent future events that may not

26  occur as anticipated, or may not occur at all.  *Cardenas v. Anzai*, 311 F.3d 929, 934 (9th

27  Cir. 2002).  Ripeness is, thus, a question of timing.  See *Regional Rail Reorganization Act*

28  *Cases*, 419 U.S. 102, 140 (1974).

<center>4</center>

1    Plaintiffs have brought a facial challenge to a statute that does not on its face

2    regulate, or even relate to, the rates, routes, or services of motor carriers.  They *predict*

3    that section 12318 will have certain effects on their businesses that contravene the

4    purposes of the FAAAA (¶ 33), yet can offer no facts nor assurances that events will

5    unfold as they anticipate.  The hypothetical nature of this case is underscored by the fact

6    that section 12318 will not take effect for several months.  Until it does, there is no way to

7    know how the law will actually be enforced, or what its effects might be on plaintiffs and

8    others.  See *Toilet Goods Ass'n v. Gardner*, 387 U.S. 158, 164 (1967) (pre-enforcement

9    dispute not ripe where regulation's impact could not "be said to be felt immediately by

10   those subject to it in conducting their day-to-day affairs").

11   Ripeness requires a threat of imminent harm.  Neither the mere existence of a

12   proscriptive statute nor a generalized threat of prosecution satisfies the "case or

13   controversy" requirement.  *San Diego County Gun Rights Comm'n v. Reno*, 98 F.3d 1121,

14   1126-27 (9th Cir. 1996).  Here, Plaintiffs cannot even allege a generalized threat of

15   prosecution because the statute remains dormant.  And while Plaintiffs allege that their

16   "[f]ailure to create and implement procedures creates criminal liability for OOIDA

17   carriers and member drivers" (¶ 40), this is a legal conclusion, not a factual allegation that

18   the Court must accept as true.  As the court in *San Diego Gun Rights Comm'n* said:

19   A concrete factual situation is necessary to delineate the boundaries of what
     conduct the government may or may not regulate. . . .  As we have previously
20   observed, "the District Court should not be forced to decide ... constitutional
     questions in a vacuum."  At this point, a decision on the merits of plaintiffs'
21   constitutional claims would be devoid of any factual context whatsoever.
     Neither the district court nor this court can "be umpire to debates concerning
22   harmless, empty shadows."

23   *Id.* at 1132-33 (citations omitted).  For the same reasons, the Court should decline to

24   adjudicate Plaintiffs' shadowy claims of injury in the absence of a ripe dispute.[3]

25

26       [3] Plaintiffs also cannot satisfy the prudential component of ripeness, under which courts
     examine the fitness of the issues for judicial decision and the hardship to the parties of
27   withholding court consideration.  *Thomas*, 220 F.3d at 1141.  Because of the statute's inchoate
     posture, Plaintiffs will experience no hardship if they are required to wait until after February
28   2011 to bring a challenge to the statute once its application is known.

5

## II.   PLAINTIFFS' CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY.

The Eleventh Amendment bars suit against a state or its instrumentalities in federal court, irrespective of the nature of the relief requested, in the absence of consent by the state or an abrogation of that immunity by Congress. *Papasan v. Allain*, 478 U.S. 265, 276-77 (1986); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Section 1983 does not abrogate a state's Eleventh Amendment immunity. *Quern v. Jordan*, 440 U.S. 332, 341 (1979). Nor has the State of California waived that immunity with respect to claims brought under section 1983 in federal court. *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985). Plaintiffs have violated this rule.

### A.   The Eleventh Amendment Precludes Plaintiffs' Claims Against the State of California and the California Department of Justice.

Plaintiffs' action against the State of California is plainly barred by the Eleventh Amendment, which immunizes the state from suits brought by its citizens in federal court. *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996). This immunity extends to state agencies like the Department of Justice (*In re Harleston*, 331 F.3d 699, 701 (9th Cir. 2003)), and applies regardless of the nature of the relief sought; both damages actions and suits for injunctive relief are barred. *Pennhurst*, 465 U.S. at 100.

Neither the State of California nor its Department of Justice have waived their sovereign immunity, accordingly the Court should dismiss them from this action.

### B.   Steve Lindley, in his Official Capacity as Acting Bureau Chief for the California Department of Justice, also is Immune from Suit under the Eleventh Amendment.

"The Eleventh Amendment [also] bars a suit against state officials when 'the state is the real, substantial party in interest.'" *Pennhurst*, 465 U.S. at 101; *see Almond Hill Sch. v. U.S. Dept. of Agric.*, 768 F.2d 1030, 1033 (9th Cir. 1985). The "general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." *Pennhurst*, 465 U.S. at 101. "[A]s when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief." *Id*. at 101-02.

6

1    The Supreme Court recognized a limited exception to Eleventh Amendment

2   immunity in *Ex Parte Young*, 209 U.S. 123 (1908).  The *Ex Parte Young* exception allows

3   "suits for prospective declaratory and injunctive relief against state officers, sued in their

4   official capacities, to enjoin an alleged ongoing violation of federal law."  *Wilbur v.*

5   *Locke*, 423 F.3d 1101, 1111 (9th Cir. 2005).  Additionally, however, for the *Ex Parte*

6   *Young* exception to apply "it is plain that such officer must have some connection with the

7   enforcement of the act, or else it is merely making him a party as a representative of the

8   State, and thereby attempting to make the State a party."  *Snoeck v. Brussa*, 153 F.3d 984,

9   986 (9th Cir. 1998).  "This connection must be fairly direct; a generalized duty to enforce

10   state law or general supervisory power over the persons responsible for enforcing the

11   challenged provision will not subject an official to suit."  *L.A. County Bar Ass'n v. Eu*,

12   979 F.2d 697, 704 (9th Cir. 1992).

13    Here, defendant Lindley is being sued in his official capacity as the Acting Chief of

14   the Department of Justice, Bureau of Firearms.  Plaintiffs allege that in this capacity he is

15   "responsible for formulating, executing and administering the State of California's laws,

16   customs, practices, and policies at issue in this lawsuit; and will in fact enforce the

17   challenged laws, customs, and practices against Plaintiffs upon their effective date."

18   (¶ 10.)  This conclusory allegation is insufficient to defeat sovereign immunity.

19    Under rule 12(b)(6), the Court may disregard this legal conclusion (*W. Mining*

20   *Council*, 643 F.2d at 624), especially because it is contradicted by paragraph 23 of the

21   complaint, which states that the Legislature and the Governor enacted AB 962, not Chief

22   Lindley.  A close reading of the complaint reveals no specific allegations whatsoever

23   regarding Chief Lindley's "direct connection" to "formulating, executing and

24   administering the State of California's laws, customs, practices, and policies at issue in

25   this lawsuit."  Indeed, the Legislature did not give the Department of Justice any special

26   role in administering or enforcing AB 962.  This action against Chief Lindley, then, is

27   based solely upon his "generalized duty to enforce state law" and is the equivalent of a

28   prohibited action against the State itself.

<div align="center">7</div>

1  Dismissing Chief Lindley on Eleventh Amendment grounds is firmly supported by

2  Ninth Circuit authority, including the case of *Long v. Van de Kamp,* 961 F.2d 151 (9th

3  Cir. 1992).  *Long* arose from warrantless surprise searches of a motorcycle repair shop by

4  deputy sheriffs and members of the California Highway Patrol pursuant to a provision in

5  the California Vehicle Code that authorized such searches.  *Long v. Van de Kamp*, 772 F.

6  Supp. 1141, 1142 (C.D. Cal. 1991).[4]  One of the operators of the repair shop was arrested

7  during a search.  *Long*, 772 F. Supp. at 1142-43.  The operators filed suit challenging the

8  constitutionality of the Vehicle Code provision.  *Id*. at 1143.  The operators named the

9  Attorney General and sought to enjoin him from enforcing the statute.  *Id*.

10  In directing the district court to dismiss the Attorney General on Eleventh

11  Amendment grounds, the Ninth Circuit stated that "there must be a connection between

12  the official sued and enforcement of the allegedly unconstitutional statute, and there must

13  be a threat of enforcement."  *Long*, 961 F.2d at 152.   The Ninth Circuit found that the

14  "general supervisory powers of the California Attorney General" did not establish the

15  connection with enforcement required by *Ex Parte Young*.  *Id*. (citing *S. Pac. Transp. Co.*

16  *v. Brown*, 651 F.2d 613, 614 (9th Cir. 1981) (as amended)).[5]  There also was no threat that

17  the Vehicle Code provision would be enforced by the Attorney General, who "ha[d] not in

18  any way indicated that he intend[ed] to enforce [the provision]."  *Id*.  "In addition, the

19  searches of plaintiffs' premises were not the result of any action attributable or traceable

20  to the Attorney General."  *Id*.   The Ninth Circuit held that "[a]bsent a *real likelihood* that

21  the state official will employ his supervisory powers against plaintiffs' interests, the

22  Eleventh Amendment bars federal court jurisdiction."  *Id*. (emphasis added).

23  ─────────────────

   [4]  While the court of appeals vacated the trial court's order in *Long*, the Ninth Circuit's
24  published decision incorporates by reference the facts of the case as set forth in the district court's
   opinion.  *See Long*, 961 F.2d at 152.

25  [5]  In *Southern Pacific Transp. Co.*, several railroads sued the Oregon Attorney General to
26  enjoin enforcement of a statute limiting employers' abilities to negotiate settlements with
   employees injured on the job.  *S. Pac. Transp. Co.*, 651 F.2d at 614.  The Ninth Circuit held that
27  "[t]he attorney general's power to direct and advise [district attorneys] does not make the alleged
   injury fairly traceable to his action, nor does it establish sufficient connection with enforcement to
28  satisfy *Ex parte Young*."  *Id*. at 615.

8

The circumstances here are analogous to those in *Long*. Plaintiffs' complaint alleges no connection between Chief Lindley and the enforcement of section 12318. His general duty to enforce the law is insufficient to establish the requisite connection. Perhaps more importantly, there is no threat of enforcement. The bare allegation that Chief Lindley "will enforce the law" upon its effective date in February 2011 is insufficient to establish a "real likelihood" that Chief Lindley will employ his general powers to enforce section 12318 against Plaintiffs. *Long*, 961 F.2d at 152. Accordingly, the *Ex Parte Young* exception does not apply in this case. *See Long*, 961 F.2d at 152; *see also Snoeck,* 153 F.3d at 987 ("As *Ex Parte Young* explains, the officers of the state must be cloaked with a duty to enforce the laws of the state and must threaten or be about to commence civil or criminal proceedings to enforce an unconstitutional act"). Plaintiffs cannot allege facts to meet this requirement, and dismissal is therefore appropriate.

## III.   PLAINTIFFS THE CALGUNS FOUNDATION, INC. AND THE NATIONAL RIFLE ASSOCIATION, INC. LACK STANDING.

The Supreme Court has stated that an association has standing to bring suit on behalf of its members when: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Washington State Apple Adver. Comm'n*, 432 U.S. 333, 343 (1977). Neither the Calguns Foundation, Inc. (Calguns) nor the National Rifle Association, Inc. (NRA) can meet this standard.

As an initial matter, Calguns does not satisfy the first *Hunt* prong because it is not alleged that any of its members are affected motors carriers, and therefore there are no facts alleged to show that its members would have standing in their own right.

And applying the second prong of the *Hunt* test, neither CalGuns nor the NRA can demonstrate that the interests at issue in the litigation are "germane to the organization's purpose." *Hunt*, 432 U.S. at 343. The complaint alleges that Calguns and the NRA are non-profit associations whose purposes include: (1) "supporting the California firearms

9

1    community by promoting education for all stakeholders about California and federal

2    firearm and ammunition laws, rights and privileges, and defending and protecting the civil

3    rights of California gun owners" (¶ 8); (2) and "protection of the right of citizens to have

4    firearms and ammunition for the lawful defense of their families, persons, and property,

5    and to promote public safety and law and order. (¶ 9.) These entities purport to represent

6    members who wish to sell and purchase ammunition over the internet. (¶¶ 8-9.)

7        The foregoing purposes and interests are not germane to the legal issues presented in

8    this lawsuit, which concerns whether California's face-to-face transaction requirement for

9    purchasing and selling handgun ammunition is preempted by a federal statute governing

10   the routes, rates, and services of *motor carriers*. To the extent that associational standing

11   exists in this case, it lies in plaintiff Owner-Operator Independent Drivers Association, Inc.

12       In *Ranchers Cattlemen Action Legal Fund United Stockgrowers of America v. U.S.*

13   *Department of Agriculture*, 415 F.3d 1078 (9th Cir. 2005), the Ninth Circuit dismissed an

14   association's environmental claims on standing grounds, finding that its purpose of

15   representing cattle producers on issues of trade and marketing was not germane to its

16   environmental claims. *Id.* at 1103-04. The situation in this case is analogous. This action

17   focuses on claims of economic injury to motor carriers, whether section 12318 regulates

18   the manner in which carriers must operate, and whether the statute will have a significant

19   effect on routes, rates and services. Such claims are not germane the NRA's and Calguns'

20   stated organizational purpose of promoting firearms education and defending the civil

21   rights of gun owners. As such, these plaintiffs lack standing. See also *Pacific Northwest*

22   *Generating Coop. v. Brown*, 38 F.3d 1058, 1063 (9th Cir. 1994) (finding that although the

23   organizational plaintiff asserted environmental injuries to it and its employees, it lacked

24   standing to bring environmental claims because its organizational purpose was economic

25   and not environmental).

26       Neither Calguns nor the NRA has suffered any injury traceable to the purportedly

27   preempted law. Accordingly, the State respectfully requests that the Court dismiss these

28   plaintiffs from the case.

10

## IV.   PLAINTIFF FOLSOM SHOOTING CLUB, INC. ALSO LACKS STANDING.

Article III standing requires a litigant to have suffered an injury-in-fact, fairly traceable to the defendant's allegedly unlawful conduct that is likely to be redressed by the requested relief. *Allen v. Wright*, 468 U.S. 737, 751 (1984).  When seeking declaratory and injunctive relief, a plaintiff must show actual present harm or a significant possibility of future harm in order to demonstrate the need for pre-enforcement review. *Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 873 (9th Cir. 1995).

Plaintiff Folsom Shooting Club (FSC) alleges that it operates a shooting range and buys and sells ammunition.  It alleges no other connection to this preemption challenge. Although FSC alleges in a conclusory fashion that if section 12318 is not declared invalid, it "will no longer be able to sell handgun ammunition, as it cannot take delivery of handgun ammunition" (¶ 43), this allegation is speculative, at best.  FSC's conjecture concerning results that *could* flow from section 12318 when it goes into effect next February falls far short of the "significant possibility of future harm" required to establish standing to obtain pre-enforcement declaratory relief.  Thus, the Court should dismiss FSC from this case for lack of standing.  See *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

## V.   PLAINTIFFS' PREEMPTION CHALLENGE FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

To successfully challenge a statute as facially unconstitutional, Plaintiffs must establish that no set of circumstances exists under which the challenged statute could be applied in a valid manner. *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Members of the City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 797-98 (1984).  Plaintiffs maintain that Penal Code section 12318 is facially preempted by the FAAAA.  The Supremacy Clause invalidates any state law that is contrary to federal law. U.S. Const., art. VI, cl. 2; *Gibbons v. Ogden*, 22 U.S. 1, 211 (1824).  But the exercise of federal supremacy is not to be lightly presumed. *Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 522 (1981) (citations omitted).  In fact, there is a strong

11

1   presumption against federal preemption of state legislation. *Richmond Boro Gun Club,*

2   *Inc. v. City of New York*, 97 F.3d 681, 687 (2d Cir. 1996) (citing *California v. ARC*

3   *America Corp.*, 490 U.S. 93, 101 (1989)).  This presumption is especially strong in the

4   fields of traditional state regulation such as health and safety measures. *Richmond Boro*

5   *Gun Club*, 97 F.3d at 687.  "In [] preemption jurisprudence, where 'federal law is said to

6   bar state action in fields of traditional state regulations, . . . [there is an] assumption that

7   the historic police powers of the States were not to be superceded by the Federal Act

8   unless that was the clear and manifest purpose of Congress.'" *California Div. of Labor*

9   *Standards Enforcement v. Dillingham Constr. N.A., Inc.*, 519 U.S. 316, 325 (1997).

10       AB 962 was enacted to promote the health and safety of California citizens, an area

11   traditionally regulated by the state pursuant to its police powers. *Brown & Williamson*

12   *Tobacco Corp. v. Pataki*, 320 F.3d 200, 217-218 (2d Cir. 2003).  Thus, Plaintiffs bear a

13   "considerable burden of overcoming 'the starting presumption that Congress does not

14   intend to supplant state law.'" *De Buono v. NYSA-ILA Med. & Clinical Servs. Fund*, 520

15   U.S. 806, 814 (1997).  An understanding of the scope of a preemption statute rests

16   predominantly on a fair understanding of the congressional purpose, as that is the

17   "ultimate touchstone" of any preemption question. *Lorillard Tobacco Co. v. Reilly*, 533

18   U.S. 525, 541 (2001); *Medtronic Inc. v. Lohr*, 518 U.S. 470, 485-86 (1996).  The intent of

19   Congress may either be explicitly stated in the language of the statute or implicitly

20   contained in its structure and purpose. *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504,

21   516 (1992).

22       The FAAAA, with certain exceptions, effectively preempts state regulations of

23   intrastate motor carrier activities. *Kelley v. United States*, 69 F.3d 1503, 1505 (10th Cir.

24   1995).  Congress determined that such preemption was necessary because the states'

25   regulations have "(A) imposed an unreasonable burden on intrastate commerce;

26   (B) impeded the free flow of trade, traffic and transportation of intrastate commerce; and

27

28

<div align="center">12</div>

1   (C) placed an unreasonable cost on the American consumers." Federal Aviation Admin.

2   Authorization Act of 1994, Pub.L. No. 103-305, 108 stat. 1569 tit. VI, § 601(a)(1)(A-C).[6]

3          The FAAAA has specifically enumerated matters concerning motor carriers which

4   are not preempted.  States are free to enact or enforce laws or regulations with respect to

5   (1) motor vehicle safety, (2) highway route controls or limitations based on size or weight

6   of the vehicle or the hazardous nature of the cargo; (3) motor carriers' financial

7   responsibility relating to insurance; (4) the transportation of household goods; and

8   (5) price for-hire motor vehicle transportation by a tow truck provided such transportation

9   is performed without prior consent or authorization of the owner or operator of the

10  vehicle.  49 U.S.C. § 14501(c)(2)(A-C).

11         But Congress has made it clear that these enumerated exceptions to preemption are

12  not exhaustive, and that state regulatory powers may extend to other areas as well.  The

13  list was merely meant to identify some of the matters which are not pricing, route, or

14  service related, and are therefore not preempted.  H.R. Conf. Rep. No. 103-677 at 84.  The

15  states may not, however, exercise their regulatory authority "as a guise for continued

16  economic regulation as it relates to prices, routes or services." *Id.*

17         It is beyond question that 49 U.S.C. § 14501(c) preempts a wide range of state

18  regulations.  It is not, however, limitless. *Kelley*, 69 F.3d at 1508.  Not every state law

19  that is related to price, route or service is automatically preempted by the FAAAA.  The

20  "related to" phrase "appears to be developing to some degree, to mean whether the state

21  law actually 'interferes' with the purposes of the federal statute." *Abdu-Brisson v. Delta*

22         [6]  As explained in the House Conference Committee Report, H.R. Conf. Rep. No. 103-677

23  at 86-88 (1994): "Currently, 41 jurisdictions regulate, in varying degrees, intrastate prices, routes
    and services of motor carriers.  Typical forms of regulation include entry controls, tariff filing and

24  price regulation, and types of commodities carried.  Not all 41 States regulate each of these
    aspects nor do they all regulate them in the same manner or in the same degree.  The need for

25  section 601 has arisen from this patchwork of regulation ... State economic regulation of motor
    carrier operations causes significant inefficiencies, increased costs, reduction of competition,

26  inhibition of innovation and technology and curtails the expansion of markets.  The sheer
    diversity of these regulatory schemes is a huge problem for national and regional carriers

27  attempting to conduct a standard way of doing business.  Lifting of these antiquated controls will
    permit our transportation companies to freely compete more efficiently and provide quality

28  service to their customers."

1   *Air Lines, Inc.*, 128 F.3d 77, 82 (2d Cir. 1997).  It is not sufficient to merely demonstrate

2   that a state statute *affects* rates, routes or services to any degree.  Where the state statute

3   affects rates, routes or services in too tenuous, remote or peripheral a manner, preemption

4   is unwarranted.  See *Morales v. TWA*, 504 U.S. 374, 390 (1992); see also *American*

5   *Airlines, Inc. v. Wolens*, 513 U.S. 219, 224 (1995).

6        In *Ace Auto Body & Towing, Ltd. v. City of New York*, 171 F.3d 765 (2d Cir. 1999),

7   plaintiffs challenged a New York City towing ordinance on the grounds it was preempted

8   by the FAAAA.  In rejecting the plaintiff's preemption argument, the Second Circuit

9   observed:

10        On the one hand . . . the broad 'related to' language of § 14501(c)(1) generally
          preempts economic regulation by the states within the field of intrastate
11        towing.  *On the other hand, the statutory text, Congress' aim to leave the
          states' residual control over safety and other local concerns intact, and the
12        presumption against preemption of historic state police power, argue against
          finding preemption where only incidental economic burdens can be discerned.*"
13
     *Id.* at 774 (emphasis added).  AB 962, the "Anti-Gang Neighborhood Protection Act," was
14
     enacted to address the public safety concern of keeping handgun ammunition out of the
15
     hands of gang members and other unauthorized persons.  The aim of the statute plainly
16
     was *not* to regulate the price, route or service of motor carriers with respect to the
17
     transportation of property.  Plaintiffs nevertheless argue in their complaint that the statute
18
     regulates the service of motor carriers with respect to the transportation of property.
19
     However, the mere fact that a statute remotely concerns the transportation of a particular
20
     cargo by common and contract carriers, in this case handgun ammunition, does not render
21
     it facially unconstitutional on preemption grounds.
22
          Plaintiffs allege that the case of *Rowe v. New Hampshire Motor Transport Ass'n*,
23
     552 U.S. 364 (2008) compels a finding of preemption here, but *Rowe* is materially
24
     distinguishable from the facts alleged in this case.  There, the Court held that the FAAAA
25
     preempted a Maine tobacco delivery law that, among other things, required licensed
26
     tobacco shippers to utilize *only* a delivery service that verified the legal age of buyer, and
27
     that imputed knowledge of a package's contents to the carrier based upon markings on the
28

                                                14

1    outside. *Id.* at 368-369. Penal Code section 12318(a), in contrast, merely provides that

2    "the delivery or transfer of ownership of handgun ammunition may only occur in a face-

3    to-face transaction with the deliverer or transferor being provided bona fide evidence of

4    identity from the purchaser or other transferee." The intrusive verification requirements

5    and presumptions present in the Maine statute are absent from section 12318. Moreover,

6    nothing in the statute requires implementation of the procedures identified in Plaintiffs'

7    complaint. Section 12318's connection with trucking, as well as its purported effect on

8    carrier rates, routes and services, is simply too "tenuous, remote, and peripheral."

9          Congress's goals in enacting 49 U.S.C. § 14501(c)(1) was twofold: "to free the

10    motor carrier industry from state and local regulation and to put that industry on a playing

11    field level with that of the air carrier industry." *Ace Auto Body*, 171 F.3d at 772. Nothing

12    in the language of subdivisions (a) or (c) of section 12318 suggests that its enforcement

13    would impede or frustrate those congressional objectives. Moreover, there is nothing

14    within the body of the federal law or in the legislative history suggesting Congress

15    intended to usurp the states' power to regulate the manner in which ammunition is shipped

16    in their borders to protect citizens from gun violence. Accordingly, Plaintiffs have failed

17    to state a claim upon which relief may be granted and the Court should grant this motion

18    and dismiss the complaint.

19    **VI.   IF THE COURT DOES NOT DISMISS THE COMPLAINT IN ITS ENTIRETY, IT
          SHOULD STAY THE ACTION PENDING RESOLUTION OF *PARKER V. STATE OF
20          CALIFORNIA, ET AL.***

21          If the Court does not dismiss this action in its entirety on one of the grounds

22    discussed above, it should stay the action pending a decision in the related case of *Parker*

23    *v. State of California, et al.*, Superior Court of California, County of Fresno, Case No.

24    10CECG02116.[7] Like this case, *Parker* involves a constitutional challenge to AB 962,

25    including Penal Code section 12318, the statute at issue in this case. In particular, the

26    plaintiffs in *Parker* allege that the definition of "handgun ammunition" is

27    ───────────────────
          [7] The complaint in *Parker* is attached as Exhibit "A" to Defendants' Request for Judicial
28    Notice, which is filed concurrently herewith.

15

1    unconstitutionally vague under the Fourteenth Amendment to the United States

2    Constitution.  (See *Parker* complaint, ¶¶ 88-103.)

3         A district court has the discretionary power to control the disposition of the cases on

4    its docket "in a manner which will promote economy of time and effort for itself, for

5    counsel, and for the litigants." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); see

6    *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  How these objectives can be achieved

7    "calls for the exercise of judgment, which must weigh competing interests and maintain

8    an even balance." *Landis*, 299 U.S. at 254-55; see *Lockyer v. Miran Corp.*, 398 F.3d

9    1098, 1110 (9th Cir. 2005) ("Where it is proposed that a pending proceeding be stayed,

10   the competing interests which will be affected by the granting or refusal to grant a stay

11   must be weighed.").  Such competing interests include "the possible damage which may

12   result from the granting of a stay, the hardship or inequity which a party may suffer in

13   being required to go forward, and the orderly course of justice measured in terms of the

14   simplifying or complicating of issues, proof, and questions of law which could be

15   expected to result from a stay." *CMAX*, 300 F.2d at 268.

16        "A trial court may, with propriety, find it is efficient for its own docket and the

17   fairest course for the parties to enter a stay of an action before it, pending resolution of

18   independent proceedings which bear upon the case." *Lockyer*, 398 F.3d at 1111 (quoting

19   *Levya v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863-64 (9th Cir. 1979); see *Landis*,

20   299 U.S. at 255 (rejecting as "too mechanical and narrow" the view that there is no power

21   to stay a proceeding upon the outcome of a controversy to which the litigant is a stranger).

22   These separate proceedings may be judicial, administrative, or arbitral in nature, and

23   proper imposition of a stay does not require that the issues in such separate proceedings

24   are necessarily controlling of the action before the court.  *Id.*  However, "[a] stay should

25   not be granted unless it appears likely the other proceedings will be concluded within a

26   reasonable time in relation to the urgency of the claims presented to the court." *Id.*

27        The issues to be addressed by the court in *Parker* unquestionably are material to the

28   case brought by Plaintiffs here.  Indeed, one of the issues raised by Plaintiffs' in their

16

1  complaint concerns the definition of "handgun ammunition." (¶ 33(b).)  That issue is

2  central to *Parker* and, if plaintiffs' vagueness challenge in that case is successful, AB 962

3  likely will be found unconstitutional and this action will become moot.  At a minimum,

4  the Superior Court's ruling in *Parker* will provide crucial direction to this Court in its

5  analysis of the issues presented in this case.

6      Plaintiffs will not be prejudiced by a stay pending a decision in *Parker* because the

7  case is at issue, a preliminary injunction motion is already set for hearing on October 28,

8  2010, and a motion for summary judgment is calendared for December 16, 2010.  (Krause

9  Decl., ¶ 3.)  Hence, those proceedings should be concluded almost *two months* before the

10  law challenged here will even go into effect.  To promote judicial economy, and to avoid

11  the needless construction of a state statute, the State respectfully requests a stay of these

12  proceedings pending a decision in *Parker v. State of California.*

13                       **CONCLUSION**

14      For all the foregoing reasons, the State respectfully requests that the Court issue an

15  order dismissing the complaint and, if necessary, staying the action pending a decision in

16  the matter of *Parker v. State of California, et al.*

17  Dated:  September 17, 2010                  Respectfully Submitted,

18                                   EDMUND G. BROWN JR.
                                     Attorney General of California
19                                   JONATHAN K. RENNER
                                     Senior Assistant Attorney General
20
                                     */s/ Peter A. Krause*
21
                                     PETER A. KRAUSE
22                                   Deputy Attorney General
                                     *Attorneys for Defendants Steve Lindley,*
23                                   *the State Of California, and the*
                                     *California Department Of Justice*
24
    SA2010102125
25  10614452.doc

26

27

28

                          17

# DECLARATION OF PETER A. KRAUSE

I, Peter A. Krause, declare as follows:

1.    I am an attorney at law duly licensed to practice in the State of California.  I am a Deputy Attorney General in the Office of the Attorney General, counsel for defendants the State Of California, the California Department Of Justice, and Steve Lindley Steve.  This declaration is submitted in support of the State's Motion to Dismiss or, in the Alternative, to Stay the Action.  I have personal knowledge of the facts set forth herein and, if called and sworn as a witness, could and would testify competently thereto.

2.    I also am counsel to defendants the State of California, Edmund G. Brown Jr. (in his capacity as Attorney General of the State of California), and the California Department of Justice in *Parker v. State of California, et al.*, Superior Court of California, County of Fresno, Case No. 10CECG02116 (June 17, 2010), the complaint in which is the subject of a Request for Judicial Notice filed concurrently herewith.

3.    The *Parker* matter is at issue and the plaintiffs in that case filed a preliminary injunction motion on September 7, 2010 that is set for hearing on October 28, 2010.  The plaintiffs also have calendared a motion for summary judgment for hearing on December 16, 2010.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 17, 2010 at Sacramento, California.

/s/ Peter A. Krause

Peter A. Krause

18