1 | Jason A. Davis (Calif. Bar No. 224250)
Davis & Associates
2 | 27281 Las Ramblas, Suite 200
Mission Viejo, CA 92691
3 | Tel 949.310.0817/Fax 949.288.6894
E-Mail: Jason@CalGunLawyers.com
4 | Attorneys for Plaintiffs OWNER-OPERATOR
INDEPENDENT DRIVERS ASSOCIATION, INC.,
5 | ERIK ROYCE, BRANDON ELIAS, FOLSOM
SHOOTING CLUB, INC., and THE CALGUNS
6 | FOUNDATION, INC.,

7 | C. D. Michel (Calif. Bar No. 144258)
Clint Monfort (Calif. Bar No. 255609)
8 | Michel & Associates, P.C.
180 East Ocean Blvd. Suite 200
9 | Long Beach, CA 90802
Tel: 562.216.4444/Fax 562.216.4445
10 | E-Mail: CMichel@Michellawyers.com
Attorneys for Plaintiff NATIONAL RIFLE ASSOCIATION, INC.

11

12 | **IN THE UNITED STATES DISTRICT COURT**

13 | **EASTERN DISTRICT OF CALIFORNIA**

14 | **SACRAMENTO DIVISION**

15

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., ERIK ROYCE, BRANDON ELIAS, FOLSOM SHOOTING CLUB, INC., THE CALGUNS FOUNDATION, INC., and NATIONAL RIFLE ASSOCIATION, INC., | ) Case No.: **10-CV-02010-MCE-KJM**<br>)<br>) **PLAINTIFFS' OPPOSITION TO**<br>) **DEFENDANTS' MOTION TO**<br>) **DISMISS THE COMPLAINT, OR**<br>) **IN THE ALTERNATIVE, TO STAY**<br>) **THE ACTION** |
| Plaintiffs, | )<br>) Date:    November 18, 2010 |
| vs. | ) Time:    2:00 |
| STEVE LINDLEY; THE STATE OF CALIFORNIA; THE CALIFORNIA DEPARTMENT OF JUSTICE; DOES 1-10 | ) Ctrm:   No. 7 - 14th Floor<br>) Judge:  Hon Morrison C. England, Jr.<br>) Trial Date:   None |
| Defendants. | ) Action Filed: 7/28/2010<br>)<br>) |

## TABLE OF CONTENTS

PAGE(S)

NATURE OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.      THE PARTIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     ASSEMBLY BILL 962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        A.      Overview of the Provisions of AB 962 . . . . . . . . . . . . . . . . . . . . . . . . . . 1

        B.      The Challenged Provision . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

                1.      The General Requirements of Section 12318 . . . . . . . . . . . . . . . . 2

                2.      Persons Exempt from the Face-to-Face Transfer/Delivery Requirement . . . 3

                3.      Penalty for Violating the Challenged Provision . . . . . . . . . . . . . . . 4

                4.      Penal Code Section 12318 Is an Express "Deemed to Know" Age
                        Verification Requirement Imposed Upon Carriers and Drivers . . . . . . . . . . 4

APPLICABLE LEGAL STANDARD . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.    PLAINTIFFS' PREEMPTION CHALLENGE STATES CLAIMS
        UPON WHICH RELIEF CAN BE GRANTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

        A.      By Its Express and Implied Terms, the Challenged Provision Is
                "Related to a . . . Service of a Motor Carrier . . . with Respect to the
                Transportation of Property" and Therefore Is Preempted by the FAAAA . . . . . . . 6

                1.      Congress Intended FAAAA Broadly to Preempt State Laws Related
                        to Carriers' Transportation Services . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

                        a.      Congress Intended the FAAAA to Eliminate a Patchwork
                                of State Laws, Specifically Including Laws Regulating
                                "Types of Commodities Carried" . . . . . . . . . . . . . . . . . . . . . . . . 6

                        b.      Congress Adopted "the Broad Preemption Interpretation"
                                of *Morales v. Trans World Airlines* for the FAAAA . . . . . . . . . . . . . 8

                        c.      The United States Supreme Court Has Unanimously Recognized
                                the Broad Scope of the FAAAA . . . . . . . . . . . . . . . . . . . . . . . . . . 8

                2.      The Challenged Provision Expressly Relates to a "Service of Any
                        Motor Carrier . . . With Respect to the Transportation of Property" . . . . . . 9

                3.      The Challenged Provision Expressly Refers to the "Service of Any Motor
                        Carrier . . . With Respect To The Transportation of Property" . . . . . . . . . 10

### TABLE OF CONTENTS (CONT.)

PAGE(S)

        4.      Section 12318 Also Has a Forbidden Significant Effect on
Carriers' Service . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

  B.    A Claim Under the Supremacy Clause Can Be Granted . . . . . . . . . . . . . . . . . . . . 12

        1.      The Threat of Enforcement Of The Challenged Provision
Constitutes Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . 13

        2.      The Constitutional Violation Is an Additional Factor Reinforcing the
Existence of Irreparable Harm . . . . . . . . . . . . . . . . . . . . . . . . . 14

  C.    A Claim for Declaratory Relief Can Be Granted . . . . . . . . . . . . . . . . . . . . . 14

IV.     PLAINTIFFS HAVE ALLEGED A RIPE CONTROVERSY . . . . . . . . . . . . . . . . . . . 15

V.      PLAINTIFFS' CLAIMS ARE NOT BARRED BY SOVEREIGN IMMUNITY . . . . . . . 15

VI.    THE CALGUNS FOUNDATION, INC. AND THE NATIONAL RIFLE
ASSOCIATION, INC. HAVE STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

  A.    The Firearm Association Members Have Standing . . . . . . . . . . . . . . . . . . . . . 17

  B.    Firearm Associations' Interest in Protecting its Members'
Ability to Access Ammunition is Germane to Its Purpose . . . . . . . . . . . . . . . . . . . 18

  C.    Relief Does Not Require the Participation of the Associations'
Individual Members . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.    FOLSOM SHOOTING CLUB HAS STANDING . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VIII.  THE COURT SHOULD NOT STAY THE ACTION PENDING
RESOLUTION OF *PARKER V. STATE OF CALIFORNIA, ET AL.* . . . . . . . . . . . . . . . . . 19

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

# TABLE OF AUTHORITIES

**PAGE(S)**

## FEDERAL CASES

*Abbot Labs. v. Gardner,*
 387 U.S. 136, 152-53 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Ams. for Med. Rights v. Heller,*
 2 F. Supp. 2d 1307, 1313 (D. Nev. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Amoco Prod. Co. v. Vill. of Gambell,*
 480 U.S. 531, 546 n.12 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*ARC Ecology v. U.S. Dep't of the Air Force,*
 411 F.3d 1092, 1096 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Artichoke Joe's v. Norton,*
 216 F. Supp. 2d 1084, 1111 (E.D. Cal. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Bell Atl. Corp. v. Twombly,
 550 U.S. 544, 570 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

*Culinary Workers Union, Local 226 v. Del Papa,*
 200 F.3d 614, 619 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.,*
 972 F. Supp. 665, 668 (N.D. Ga. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Elrod v. Burns,*
 427 U.S. 347, 373 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Kelly v. United States,*
 69 F.3d 1503, 1508 (10th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Lainer v. City of Boston,*
 95 F. Supp. 2d 17, 21 (D. Mass. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Landis v. N. Am. Co.,*
 299 U.S. 248,  255 (1936) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Lockyer v. Mirant Corp.,*
 398 F.3d 1098, 1110 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Long v. Van de Kamp,*
 961 F.2d 151 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Lujan v. Defenders of Wildlife,*
 504 U.S. 555, 560 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

*McGary v. City of Portland,*
 386 F.3d 1259, 1261 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

1

**TABLE OF AUTHORITIES (CONT.)**

2

PAGE(S)

3

**FEDERAL CASES (CONT.)**

4

*Morales v. Trans World Airlines, Inc.*,
    504 U. S. 374, 378 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 8,

5

*Pub. Serv. Comm'n of Utah v. Wycoff Co.*,
    344 U.S. 237, 240-41 (1952) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

6

7

*Rowe v. N.H. Motor Transport Assoc.*,
    552 U.S. 364, 366, 370-71 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

8

*Seminole Tribe of Fla. v. Florida*,
    517 U.S. 44, 55-56 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9

10

*S.F. County Democratic Cent. Comm. v. Eu*,
    826 F.2d 814, 825 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11

*Simon v. E. Ky. Welfare Rights Org.*,
    426 U.S. 26, 41-42 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

12

13

*Socialist Workers Party v. Leahy*,
    145 F.3d 1240, 1246 (11th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

14

*Southern Pacific Transp. Co. v. Brown*,
    651 F.2d 613 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

15

16

*Trans World Airlines, Inc. v. Mattox*,
    897 F.2d 773, 784 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8, 14

17

*United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*,
    517 U.S. 544, 553 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

18

19

*United Parcel Serv., Inc. v. Flores-Galarza* (*Flores-Galarza I*),
    210 F. Supp. 2d 33, 43 (D.P.R. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

20

*United Parcel Serv., Inc. v. Flores-Galarza* (*Flores-Galarza II*),
    318 F.3d 323, 335-36 (1st Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

21

22

*Warth v. Seldin*,
    422 U.S. 490, 505 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18, 19

23

*Fed. Express Corp. v. Cal. Pub. Utils. Comm'n*,
    No. 87-4891, 1993 U.S. Dist. LEXIS 13830, at *13-14 (N.D. Cal. Sept. 23, 1993) . . . . . . . . 15

24

25

*Soly v. United Parcel Serv., Inc.*,
    No. 02-10499, 2002 U.S. Dist. LEXIS 24059, at *1-3 (D. Mass. Aug. 22, 2002) . . . . . . . . . 10

26

27

28

## TABLE OF AUTHORITIES (CONT.)

PAGE(S)

**STATE CASES**

*Parker v. State of California*,
    No. 10-0216 (filed June 17, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Younger v. Berkeley City Council*,
    45 Cal. App. 3d 825, 832 (1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

**STATUTES & RULES**

ASSEMBLY BILL 962 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Cal. Penal Code § 11105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Cal. Penal Code § 12101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 5

Cal. Penal Code § 12071 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

Cal. Penal Code § 12083 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12

Cal. Penal Code § 12060 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Penal Code §  12061 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 3

Cal. Penal Code § 12316 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Cal. Penal Code § 12317 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Cal. Penal Code §12318 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

Gov't Code § 6275 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Gov't Code § 6276.18 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Airline Deregulation Act of 1978,
    Pub. L. No. 95-504, 92 Stat. 1705 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 8

Federal Aviation Administration Authorization Act of 1994 ("FAAAA"),
    Pub. L. No. 103-305, 108 Stat. 1569, 1605-06 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

ICC Termination Act of 1995,
    Pub. L. No. 104-88, 109 Stat. 899 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Motor Carrier Act of 1980,
    Pub. L. No. 96-296, 94 Stat. 793 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**NATURE OF THE CASE**

**I.    THE PARTIES**

Plaintiff Independent Owner-Operator Independent Drivers Association, Inc. ("OOIDA") represents the trucking industry, including Plaintiffs Brandon Elias, Erik Royce (hereinafter referred to as "Individual Plaintiffs").  (Compl. ¶¶ 3, 5-6.)  It is the business of OOIDA's members and Individual Plaintiffs to engage in the commercial transportation and delivery of packages containing property, including in some instances "handgun ammunition," to recipients in California.  (Compl. ¶3.)  Plaintiffs Calguns Foundation, Inc. ("CGF") and National Rifle Association, Inc. ("NRA") (Collectively "Firearms Associations") represent their members, including Individual Plaintiffs and Plaintiff Folsom Shooting Club, Inc., in firearm related matters.  (Compl. ¶¶ 5-7,9.)[1]  By this action, Firearms Associations seek to protect the interests that are central to their purposes of representing, and advocating on behalf of, the national firearms industry and the California firearms community, including Individual Plaintiffs themselves.  (Compl. ¶¶ 5-8.)

Plaintiffs sue the Department of Justice, the State of California, and Acting Chief of the Bureau of Firearms, Steve Lindley.  Defendant Steve Lindley is sued in his official capacity as the Acting Chief for the Bureau of Firearms, within the Law Enforcement Division of the California DOJ.

**II.    ASSEMBLY BILL 962**

**A.    Overview of the Provisions of AB 962**

In 2009, Governor Schwarzenegger signed Assembly Bill 962 (2009-2010 Reg. Sess.) ("AB 962")[2] into law, which added Penal Code[3] sections 12060, 12061, and 12318 to the California Penal Code and implemented a statutory scheme for the transfer and delivery of "handgun ammunition."  An "Information Bulletin" published by the California Department of Justice ("DOJ"), Division of Law Enforcement, Bureau of Firearms, and signed by Defendant Steve Lindley's predecessor, Former Bureau of Firearms Chief

---

[1]  In addition, Firearms Association members would have standing to sue in their own right, and neither the claims asserted nor the prospective relief requested requires the participation of individual Association members in the lawsuit.  The Associations, therefore, have standing to bring this lawsuit on behalf of their members.  *See* discussion *infra* Parts VI, VII.

[2]  AB 962 is codified at California Penal Code Sections 12060, 12061, 12316, 12317, and 12318.  Only the provisions of Section 12318 are challenged in this suit.

[3]  Unless otherwise stated, all further code references are to California Penal Code provisions.

Wilfredo Cid, describes the requirements of AB 962 as follows:

- "Handgun ammunition must be displayed in a manner that makes the ammunition inaccessible to the purchaser or transferee, and requires the assistance of the vendor or an employee of the vendor." Cal. Penal Code § 12061.
- "An employee of a handgun ammunition vendor, who is prohibited from possessing firearms, cannot handle, sell, or deliver handgun ammunition in the course and scope of his or her employment." *Id.*
- "No one shall supply, deliver, or give ammunition to a minor who is prohibited from possessing ammunition pursuant to section 12101." *Id.* § 12316.
- "Any person who is enjoined from engaging in activity associated with a criminal street gang is prohibited from possessing ammunition. A violation is a misdemeanor." *Id.* § 12316.
- "Beginning February 1, 2011, handgun ammunition vendors must obtain a thumbprint and other information related to handgun ammunition transactions subject to specified exceptions (including transfers to peace officers who are authorized to carry a firearm in the course and scope of their duties). The information must be retained by the vendor for five years from the date of the transaction. A violation is a misdemeanor." *Id.* § 12061.
- "Beginning February 1, 2011, the delivery or transfer of handgun ammunition must occur in a face-to-face transaction, with the recipient providing bona fide evidence of his or her identity and age, subject to specified exceptions. *Non face-to-face transfers, such as internet transactions and mail order deliveries are prohibited.* A violation is a misdemeanor." *Id.* § 12318 (emphasis added).[4]

## B.    The Challenged Provision

### 1.    The General Requirements of Section 12318

Section 12318(a) expressly regulates the delivery of "handgun ammunition"[5]: Commencing February 1, 2011, the delivery or transfer of ownership of "handgun ammunition" may only occur in a face-to-face transaction with the deliverer or transferor being provided bona fide evidence of identity[6] from the purchaser or other transferee.

As referenced above, the California DOJ, by and through the Bureau of Firearms, has inaccurately opined that this provision prohibits "non-face-to-face transfers, such as internet transactions and mail order deliveries." (Ex. 1.)  The Challenged Provision actually permits mail order and internet transactions to

---

[4]  A copy of the December 30, 2009, "Information Bulletin" issued by the California Department of Justice – Bureau of Firearms' former Chief, Wilfredo Cid, is attached hereto as Exhibit 1.

[5]  "*Handgun ammunition*" means handgun ammunition as defined at Section 12323(a), but excluding ammunition designed and intended to be used in an "antique firearm" as defined in 18 U.S.C. § 921(a)(16). Handgun ammunition does not include blanks.  Cal. Penal Code § 12318(b)(2).

[6]  "*Bona fide evidence of identity*" means a document issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to, a motor vehicle operator's license, state identification card, identification card issued to a member of the Armed Forces, or other form of identification that bears the name, date of birth, description, and picture of the person. Cal. Penal Code § 12318(b)(1).

consumers – provided that the carriers, via their drivers, obtain "bona fide evidence of identity" from the purchaser or other transferee.[7]  This interpretation is supported by the legislative history:

> The author's office has informed the Committee staff that the author's intent was to allow Internet sales of ammunition to be conducted only through a licensed dealer.  That is, if a consumer wanted to buy certain types of ammunition available only on the Internet, this transaction could take place by having the ammunition shipped to a licensed ammunition dealer who could then sell the ammunition to the consumer.  *However, the current language of the bill contains no requirement that the "deliverer" only deliver ammunition to a licensed dealer, only that the "deliverer," presumably a common carrier like Federal Express or UPS, check the purchaser or transferee's identification*."

S. Comm. Pub. Safety, B. Analysis on Assem. B. 962 as Amended June 22, 2009, 2009-2010 Reg. Sess., at F (Cal. 2009) (emphasis added).  Thus, at a minimum, the Challenged Provision mandates that carriers, via their drivers, obtain "bona fide evidence of identity" prior to delivering "handgun ammunition."

### 2.    Persons Exempt from the Face-to-Face Transfer/Delivery Requirement

Not all transfers/deliveries of "handgun ammunition" are subject to the "bona fide identification" requirement.  Section 12318(c) exempts deliveries, transfers, or sales of "handgun ammunition" to any of the following:

- Authorized law enforcement representatives of cities, counties, cities and counties, or state and federal governments for exclusive use by those government agencies if, prior to the delivery, transfer, or sale of the handgun ammunition, written authorization from the head of the agency employing the purchaser or transferee, is obtained identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the agency employing the individual.[8]
- Sworn peace officers, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 who are authorized to carry a firearm in the course and scope of their duties.[9]
- Importers and manufacturers of handgun ammunition or firearms licensed to engage in business pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United

---

[7]  If, however, California contends that Section 12061(a)(3) applies to out-of-state "handgun ammunition vendors," then out-of-state "handgun ammunition vendors" will also be limited to using only those carriers, subject to some exceptions, that legibly record the following at the time of delivery:   (A) The date of the sale or other transaction; (B) the purchaser's or transferee's driver's license or other identification number and the state in which it was issued; (C) the brand, type, and amount of ammunition sold or otherwise transferred;  (D) the purchaser's or transferee's signature; (E) the name of the salesperson who processed the sale or other transaction; (F) the right thumbprint of the purchaser or transferee on the above form; (G) the purchaser's or transferee's full residential address and telephone number; and  (H) the purchaser's or transferee's date of birth.

[8]  The DOJ does not maintain a list of all law enforcement representatives of California counties, cities and counties, cities, and state government.

[9]  The DOJ does not maintain a current list of all sworn peace officers in California who are authorized to carry a firearm in the course and scope of their duties.

States Code and the regulations issued pursuant thereto.[10]
- Persons who are on the centralized list maintained by the Department of Justice pursuant to Section 12083.[11]
- Persons whose licensed premises are outside this state who are licensed as dealers or collectors of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto.[12]
- Persons licensed as collectors of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto whose licensed premises are within this state who has a current certificate of eligibility issued to him or her by the DOJ.[13]
- Any "handgun ammunition vendor:" i.e. a person, firm, corporation, dealer, or any other business enterprise that is engaged in the retail sale of any "handgun ammunition," or that holds itself out as engaged in the business of selling any "handgun ammunition."[14]
- A consultant or evaluator who, in the course of his or her profession is loaned firearms from a person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, for his or her research or evaluation, and has a current certificate of eligibility issued to him or her pursuant to Section 12071.[15]

Section 12318 provides no further guidance as to how carriers and drivers are supposed to determine whether the recipient of a package falls within any one of these enumerated exemptions.

### 3.   Penalty for Violating the Challenged Provision

Unlike the other provisions of AB 962 (e.g., Section 12316), which apply the reckless disregard standard, there is no express *scienter* requirement within the Challenged Provision; and, a violation is a misdemeanor.  Cal. Penal Code §12318(a).

### 4.   Penal Code Section 12318 Is an Express "Deemed to Know" Age Verification Requirement Imposed Upon Carriers and Drivers

Sections 12318(b)(1) and 12316(a)(1)(C) collectively impose a duty on carriers and drivers to check

---

[10]  The DOJ does not maintain a current list of all importers and manufactures of handgun ammunition who are licensed pursuant to federal law.

[11]  This list is prohibited from being disclosed.  *See* Cal. Gov't Code §§ 6254(k), 6275, 6276.18; Cal. Penal Code §§ 12083(e), 12071(c)(4),(e); *Younger v. Berkeley City Council*, 45 Cal. App. 3d 825, 832 (1975).

[12]  The DOJ does not maintain a current list of all dealers and collectors of firearms who are licensed pursuant to federal law.

[13]  Disclosure of the list of persons with Certificates of Eligibility is prohibited. Cal. Penal Code §§ 11105, 12071; Cal. Gov't Code § 6254(k).  The DOJ does not maintain a current list of all dealers and collectors of firearms who are licensed pursuant to federal law.

[14]  The DOJ does not maintain a current list of "handgun ammunition vendors."

[15]  The DOJ does not maintain a current list of "Consultants or evaluators."

1  the age of any recipients of ammunition.  Section 12318 permits deliveries provided that the carrier or driver

2  obtain "bona fide evidence of identity," which is defined as "a document issued by a federal, state, county,

3  or municipal government, or subdivision or agency thereof . . . that bears the *name, date of birth,*

4  *description, and picture of the person*."  *Id.* § 12318(b)(1) (emphasis added).

5        Under section 12316, "[a]ny person, corporation, or dealer who does any of the following shall be

6  punished by imprisonment in a county jail for a term not to exceed six months, or by a fine not to exceed

7  one thousand dollars ($1,000), or by both the imprisonment and fine: [s]upplies, *delivers*, or gives possession

8  of any ammunition *to any minor* who he or she *knows, or using reasonable care should know*, is prohibited

9  from possessing that ammunition at that time pursuant to Section 12101."[16] *Id.* § 12316(a)(1)(C) (emphasis

10  added).

11        In requiring persons delivering "handgun ammunition" to verify "bona fide evidence of identity,"

12  which includes a date of birth, a carrier will be "deemed to know" the age of the person receiving a package

13  and, therefore, whether the recipient is a minor.  As such, carriers must not only check identity pursuant to

14  Section 12318, but also check age pursuant to Section 12316(a)(1)(C).  And, because Section 12318(a) also

15  regulates the transfer of ownership of "handgun ammunition," *shippers* are additionally required to ensure

16  that the carrier chosen provides a Section 12318 recipient-identification and age check service and/or Section

17  12318 "exceptions" check service in order to avoid liability.

18                     **APPLICABLE LEGAL STANDARD**

19        On a motion to dismiss, the Plaintiff's allegations "are taken as true and construed in the light

20  most favorable to the plaintiff."  *McGary v. City of Portland*, 386 F.3d 1259, 1261 (9th Cir. 2004)

21  (emphasis added).  Dismissal of a claim is appropriate "only if it appears beyond doubt that the claimant

22  can prove no set of facts in support of the claim which would entitle him to relief."  *ARC Ecology v. U.S.*

23  *Dep't of the Air Force*, 411 F.3d 1092, 1096 (9th Cir. 2005); *see also Bell Atl. Corp. v. Twombly*, 550

24  U.S. 544, 570 (2007).

25

26      [16]   Section 12101(b)(1) bars the possession of live ammunition by minors.  Paragraph (1), however, does

27  not apply if: (1) The minor has the *written consent of his or her parent or legal guardian to possess live ammunition;* or (2) the minor is accompanied by his or her parent or legal guardian; or (3) the minor is *actively*

28  *engaged* in, or is going to or from, a lawful, recreational sport, including, but not limited to, competitive shooting, or agricultural, ranching, or hunting activity, the nature of which involves the use of a firearm.  Cal. Penal Code § 12101(b)(2) (emphasis added).

**ARGUMENT**

**III.  PLAINTIFFS' PREEMPTION CHALLENGE STATES CLAIMS UPON WHICH RELIEF CAN BE GRANTED**

    **A.  By Its Express and Implied Terms, the Challenged Provision Is "Related to a . . . Service of a Motor Carrier . . . with Respect to the Transportation of Property" and Therefore Is Preempted by the FAAAA**

       To achieve national uniformity in the interstate transportation of property, Congress has mandated that carriers be subject exclusively to uniform federal laws regarding their prices, routes, and services.  Specifically, through the FAAAA, Congress has provided that:

> [A] State, political subdivision of a State, or political authority of 2 or more States may not enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of any motor carrier . . . with respect to the transportation of property.

49 U.S.C. § 14501(c)(1) (emphasis added); 49 U.S.C. § 41713(b)(4)(A) (using the same preemptive language with respect to air and intermodal air/ground carriers).[17]

       The Challenged Provision violates the FAAAA by regulating the service of carriers and drivers who transport and deliver property to persons in the State of California.  Section 12318 explicitly regulates to whom and how carriers and drivers may make a delivery of "handgun ammunition" in California.  By its express terms, the Challenged Provision is a law "related to a . . . service of any motor carrier . . . with respect to the transportation of property" and therefore is preempted as a matter of law.

       **1.  Congress Intended FAAAA Broadly to Preempt State Laws Related to Carriers' Transportation Services**

             **a.  Congress Intended the FAAAA to Eliminate a Patchwork of State Laws, Specifically Including Laws Regulating "Types of Commodities Carried"**

       The FAAAA's preemption provisions were designed to eliminate the "patchwork of regulation" that state laws had imposed on motor and intermodal air/motor cargo carriers.[18]  H.R. Rep. No. 103-677,

---

[17]  Although this Motion generally discusses the motor carrier preemption provision of the FAAAA, 49 U.S.C. §14501(c)(1), the air and intermodal air/ground carrier provision, 49 U.S.C. §41713(b)(4)(A), also applies to those motor carriers affiliated with air carriers through common controlling interest.  *See, e.g.*, *Deerskin Trading Post, Inc. v. United Parcel Serv. of Am., Inc.*, 972 F. Supp. 665, 668 (N.D. Ga. 1997) (applying both FAAAA provisions to UPS).

[18]  In 1978, "Congress determin[ed] that maximum reliance on competitive market forces" would favor lower airline fares and better airline service, and it enacted the Airline Deregulation Act ("ADA").  *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 378 (1992) (internal quotation marks omitted); *see* Airline Deregulation

1  at 87 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715, 1759; *see Kelly v. United States*, 69 F.3d 1503, 1508

2  (10th Cir. 1995) (FAAAA preemption "clearly serves to eliminate the 'patchwork' of varying state

3  regulations that concerned Congress").  Section 601 of the FAAAA, titled "Pre-emption of Intrastate

4  Transportation of Property," includes Congress' express findings that state regulation of motor cargo

5  carriers had "imposed an unreasonable burden on interstate commerce [and] impeded the free flow of

6  trade, traffic, and transportation of interstate commerce." FAAAA, Pub. L. No. 103-305, 108 Stat. 1569,

7  1606; *see also* H.R. Rep. No. 103-677, at 87, *reprinted in* 1994 U.S.C.C.A.N. at 1759 (finding that state

8  regulation had caused "significant inefficiencies, increased costs, reduction of competition, inhibition of

9  innovation and technology and curtail[ed] the expansion of markets").  As explained by the House

10  Conference Committee Report, FAAAA preemption was "necessary to facilitate interstate commerce"

11  because:

12  > State economic regulation of motor carrier operations cause significant efficiencies increased costs, reduction of competition, inhibition of innovation and technology and
13  > curtail the expansion of markets . . . .  The sheer diversity of these regulatory schemes is a huge problem for national and regional carriers attempting to conduct a standard way of
14  > doing business.

15  H.R. Rep. No. 103-677, at 87, *reprinted in* 1994 U.S.C.C.A.N. at 1759.

16  Through the FAAAA's preemption of state laws, Congress intended that carriers' "[s]ervice

17  options will be dictated by the marketplace; and not by an artificial regulatory structure." *Id.* at 88,

18  *reprinted in* 1994 U.S.C.C.A.N. at 1760.  Also, through the FAAAA, Congress intended to eliminate

19  state regulation of carriers –including restrictions on "types of commodities carried." *Id.* at 86, *reprinted*

20  _____

21  Act of 1978, Pub. L. No. 95-504, 92 Stat. 1705.  In order to "ensure that the States would not undo federal
deregulation with regulation of their own," that Act "included a pre-emption provision" that said "no State . . .

22  shall *enact or enforce* any law . . . relating to rates, routes, or services of any air carrier."  *Morales*, 504 U.S. at
378 (emphasis added).

23  In 1980, Congress deregulated trucking.  *See* Motor Carrier Act of 1980, Pub. L. No. 96-296, 94 Stat.
793.  And a little over a decade later, in 1994, Congress similarly sought to preempt state trucking regulation.

24  *See* Federal Aviation Administration Authorization Act of 1994 ("FAAAA"), Pub. L. No. 103-305, 108 Stat.
1569, 1605-06; *see also* ICC Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 899.  In doing so, it

25  borrowed language from the ADA and wrote into its 1994 law language that says:  "[A] State . . . may not *enact
or enforce* a law . . . related to a price, route, or service of any motor carrier . . . with respect to the transportation

26  of property."  49 U.S.C. § 14501(c)(1) (emphasis added); *see also* 49 U.S.C. § 41713(b)(4)(A) (similar provision
for combined motor-air carriers).

27  At the time the FAAAA was enacted, 41 states "regulated[d], in varying degrees, intrastate prices, routes,

28  and services of motor carriers."  H.R. Rep. No. 103-677, at 86 (1994), *reprinted in* 1994 U.S.C.C.A.N. 1715,
1758.  As noted in the House Conference Report, the "[t]ypical forms of regulation" included restrictions on
"*types of commodities carried.*"  *Id.* (emphasis added).

1   *in* 1994 U.S.C.C.A.N. at 1758 (emphasis added).[19]

2
      **b.    Congress Adopted "the Broad Preemption Interpretation" of *Morales*
3             *v. Trans World Airlines* for the FAAAA**

4        To accomplish its goal of eliminating a patchwork of state regulation, Congress expressly

5   adopted the "broad preemption interpretation adopted by the United States Supreme Court in" *Morales*

6   *v. Trans World Airlines, Inc.*, 504 U.S. 374 (1992).  H.R. Rep. No. 103-677, at 83, *reprinted in* 1994

7   U.S.C.C.A.N. at 1755.  *Morales* interpreted the Airline Deregulation Act ("ADA"), which had used

8   virtually identical preemptive language with respect to air carriers.  504 U.S. at 383.  The *Morales* Court

9   concluded that "[t]he ordinary meaning of ["relating to"] is a broad one – 'to stand in some relation; to

10  have bearing or concern; to pertain; refer; to bring into association with or connection with,' – and the

11  words thus express a broad pre-emptive purpose." *Id.* (citation omitted).  Based on that ordinary

12  meaning, as well as other cases interpreting the "relates to" language of the ERISA preemption

13  provision, the Court held that "State enforcement actions having a connection with, or reference to,

14  airline 'rates, routes, or services' are pre-empted" by ADA. *Id.* at 384.  *Morales* held that a state law is

15  preempted if it either:  (1) makes "express reference" to carriers' price, route, or service, or (2) has a

16  "forbidden significant effect" on price, route, or service. *Id.* at 388.[20]

17
      **c.    The United States Supreme Court Has Unanimously Recognized the
18            Broad Scope of the FAAAA**

19       Applying *Morales*, the United States Supreme Court held that the FAAAA preempted Maine's

20  tobacco delivery identification laws.  *Rowe v. N.H. Motor Transport Assoc.*, 552 U.S. 364, 366, 370-71

21  ────────────────

22       [19]  Congress included in each preemption provision of the FAAAA a subsection entitled "Matters Not
     Covered," which preserves "the safety regulatory authority of a State with respect to motor vehicles"; state
23   authority to "impose highway route controls or limitations based on the size or weight of the motor vehicle or the
     hazardous nature of the cargo"; and state authority to "regulate motor carriers with regard to minimum amounts
24   of financial responsibility relating to insurance requirements." 49 U.S.C. §§ 14501(c)(2)(A), 41713(b)(B)(i).  No
     such preserved authority is at issue here.  Congress also preserved state authority to regulate household goods
25   carriers (i.e., moving companies) and the price of non-consensual tow truck transportation, which also are not at
     issue here.  *See* 49 U.S.C. §§ 14501(c)(2)(B)-(C), 41713(b)(4)(B)(i).
26
27       [20]  The *Morales* Court clarified that states remain free to enforce laws that have only a *tangential*
     connection to price, route, or service.  The court noted that its broad interpretation of preemption would not lead
28   to preemption of "state laws against gambling or prostitution as applied to airlines" because "some state actions
     may affect [airline fares] in too tenuous, remote, or peripheral a manner to have pre-emptive effect." *Morales*,
     504 U.S. at 390 (citation omitted)(internal quotation marks omitted).

(2008).  Specifically, the section at issue forbade licensed tobacco retailers to employ a "delivery service" unless that service follows particular delivery procedures.  *Id.* at 371.  In doing so, it focused on trucking and other motor carrier services (which make up a substantial portion of all "delivery services").  *Id.*  And the Court went on to say:

> The Maine law thereby produces the very effect that the federal law sought to avoid, namely, a State's direct substitution of its own governmental commands for "competitive market forces" in determining (to a significant degree) the services that motor carriers will provide.
>
> . . . .
> We concede that the regulation here is less "direct" than it might be, for it tells shippers what to choose, rather than carriers what to do.  Nonetheless, the effect of the regulation is that carriers will have to offer tobacco delivery services that differ significantly from those that, in the absence of the regulation, the market might dictate.

*Id.* at 372 (citations omitted) (emphasis omitted).  The Court went on to describe the Maine law's impact as specific to truckers:

> In this case, the state law is not general, it does not affect the truckers solely in their capacity as members of the general public, the impact is significant, and the connection with trucking is not tenuous, remote or peripheral.  The state statutes aim directly at the carriage of goods, a commercial field where carriage by commercial motor vehicles plays a major role. The state statutes require motor carrier operators to perform certain services, thereby limiting their ability to provide incompatible alternative services; and they do so simply because the State seeks to enlist the motor carrier operators as allies in its enforcement efforts.  Given these circumstances, from the perspective of pre-emption, this case is no more "borderline" than was *Morales*.

*Id.* at 375-76.

### 2.    The Challenged Provision Expressly Relates to a "Service of Any Motor Carrier . . . With Respect to the Transportation of Property"

As in *Rowe*, the express terms of the Challenged Provision restrict not only how "handgun ammunition" must be shipped, but how a carrier and/or driver "delivers" "handgun ammunition," under fear of criminal penalty.  Cal. Penal Code § 12318(a).  And, the Challenged Provision also dictates to whom "handgun ammunition" may be delivered without checking the recipient's "bona fide identity."  Cal. Penal Code § 12318(c).  There is no question that the Challenged Provision has a connection with or reference to carriers' services – expressly mandating identification and age checks for standard deliveries, and even more for "exempt" deliveries of "handgun ammunition."  Because the Challenged Provision explicitly regulates whether, to whom, and how carriers are permitted to deliver certain goods to recipients in California, it is preempted as a matter of law.

3. **The Challenged Provision Expressly Refers to the "Service of Any Motor Carrier . . . With Respect To The Transportation of Property"**

By its express terms, Section 12318 proscribes the illegal "delivery" of "handgun ammunition." Specifically, it makes it a misdemeanor to deliver or transfer ownership of "handgun ammunition" if it is not conducted "in a face-to-face transaction with the deliverer or transferor being provided" "a document issued by a federal, state, county, or municipal government, or subdivision or agency thereof, including, but not limited to, a motor vehicle operator's license, state identification card, identification card issued to a member of the Armed Forces, or other form of identification that bears the name, date of birth, description, and picture of the person."[21]  Cal. Penal Code § 12318(a), (b)(1).  And, via Section 12316(a)(1)(C), it is a "deemed to know" statute for age verification purposes and generally subjects carriers and drivers to further criminal liability for delivery of "handgun ammunition" to minors.

Deliveries to any one of eight classes of persons, however, are exempt from the general prohibition – *if* the recipient can substantiate exemption status. *Id.* §12318(c).  These prohibitions against the illegal "delivery" of "handgun ammunition" satisfy the "express reference" test for preemption set forth in *Rowe*, 552 U.S. at 373, *Morales*, 504 U.S. at 388, and *United Parcel Serv., Inc. v. Flores-Galarza* (*Flores-Galarza II*), 318 F.3d 323, 335 (1st Cir. 2003).

In *Rowe*, the United States Supreme Court unanimously held that Maine's minor age verification requirement was preempted:

> To allow Maine to insist that carriers provide a special checking system would allow other States to do the same.  And to interpret the federal law to permit these, and similar, state requirements could easily lead to a patchwork of state service-determining laws, rules, and regulations.  That state regulatory patchwork is inconsistent with Congress' major legislative effort to leave such decisions, where federally unregulated, to the competitive Market Place.  If federal law pre-empts state regulation of the details of an air carrier's frequent flyer program, a program that primarily promotes carriage, it must pre-

---

[21]  A carrier's delivery of the property it transports is a core part of the carrier's service within the meaning of the FAAAA. *United Parcel Serv., Inc. v. Flores-Galarza* (*Flores-Galarza II*), 318 F.3d 323, 335-36 (1st Cir. 2003) (holding FAAAA preempts statue that "forbids delivery" because "[c]ompliance with this provision significantly affects the timeliness and effectiveness of UPS's *service, which includes the delivery of packages* on an express or time-guaranteed basis" (emphasis added)); *see also Soly v. United Parcel Serv., Inc.*, No. 02-10499, 2002 U.S. Dist. LEXIS 24059, at *1-3 (D. Mass. Aug. 22, 2002) (claims arising from delivery of packages "do not merely relate to UPS services, they arise directly from core services provided by UPS, going to the heart of the 'services' that UPS provides" (citation omitted) (internal quotation marks omitted)); 49 U.S.C. § 13102(21)(B)("transportation" includes "services related to [the movement of passengers or property], including . . . receipt, [and] delivery").

1   empt state regulation of the essential details of a motor carrier's system for picking up,
2   sorting, and carrying goods – essential details of the carriage itself.

3   *Rowe,* 552 U.S. at 373 (citations omitted).

4   Further, the decisions of the district court and Court of Appeals of the First Circuit in *Flores-*

5   *Galarza II* are also directly on point.  Like the Challenged Provisions here, one aspect of the statutory

6   scheme held preempted in Puerto Rico made certain deliveries unlawful.  There, the court specifically

7   held that the Puerto Rico statute that "forbids delivery" of packages to unauthorized recipients was

8   preempted because it "both refers to and has a forbidden significant effect on UPS's prices, routes or

9   services."  *Flores-Galarza II,* 318 F.3d at 335-36.  As the district court explained:

11   The scheme makes "express reference" to carriers' services.  It expressly prohibits
     carriers from making deliveries to consignees who do not have a certificate from the
12   defendant authorizing the delivery. . . .  Therefore, under the first *Morales* test, they, and
     their enforcement mechanisms, are preempted by the FAAAA.

13   *United Parcel Serv., Inc. v. Flores-Galarza* (*Flores-Galarza I*), 210 F. Supp. 2d 33, 43 (D.P.R. 2002)

14   *aff'd*, 318 F.3d 323 (1st Cir. 2003) (citations omitted).

15   Here, as in *Flores-Galarza,* the Challenged Provision expressly refers to carriers' services by

16   proscribing to whom carriers may make certain deliveries.  Here, too, that express reference renders

17   Section 12318 preempted as a matter of law.

18   **4.  Section 12318 Also Has a Forbidden Significant Effect on Carriers' Service**

19   By its terms, Section 12318 also satisfies the alternative preemption test of having a "forbidden

20   significant effect" on carriers' services.  *Rowe*, 552 U.S. at 375, *Morales*, 504 U.S. at 388, *Flores-*

21   *Galarza II*, 318 F.3d at 335.

22   To avoid violating Section 12318, and Section 12316, carriers must establish policies and

23   procedures that have those forbidden and significant effects on carriers' service.[22]  *See Flores-Galarza I*,

---

[22]  Such policies and procedures necessarily include methods to:
a.   Determine which calibers of ammunition are deemed "handgun ammunition" under California law, since
     there is no regulation or California law clearly identifying which ammunition is "handgun ammunition";
b.   Implement policies and procedures requiring all California bound packages containing handgun
     ammunition be designated and tracked as containing "handgun ammunition";
c.   Implement and act on policies and procedures to determine whether the recipients of packages containing
     "handgun ammunition" are:
     i.   Authorized law enforcement representatives of cities, counties, cities and counties, or state and

1    210 F. Supp. 2d at 38 ("complying with the statutory ban on deliveries . . . has an obvious impact on

2    UPS's delivery services").  In short, Section 12318 requires carriers and drivers to offer a system of

3    services that the market does not now provide.  *See Rowe*, 552 U.S. at 372.  Because, by its express

4    terms, Section 12318 requires carriers to engage in these steps in order to provide transportation and

5    delivery services to California, it necessarily has a significant effect on carriers' service and is preempted

6    on that alternative basis.

7    **B.    A Claim Under the Supremacy Clause Can Be Granted**

8        Plaintiffs have demonstrated above that they will succeed on the merits of Count One of the

9    Complaint under the Supremacy Clause.  For that reason, and because the Plaintiffs and their

10   members will be irreparably harmed if the Challenged Provision is enforced, Plaintiffs are entitled to

11   _____

12   federal governments for exclusive use by those government agencies if, prior to the delivery, transfer, or sale of the handgun ammunition, written authorization from the head of the agency

13   employing the purchaser or transferee, is obtained identifying the employee as an individual authorized to conduct the transaction, and authorizing the transaction for the exclusive use of the

14   agency employing the individual Sworn peace officers, as defined in Chapter 4.5 (commencing with Section 830) of Title 3 of Part 2 who are authorized to carry a firearm in the course and

15   scope of their duties;

      ii.    Importers and manufacturers of handgun ammunition or firearms licensed to engage in business

16           pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto;

17   iii.    Persons who are on the centralized list maintained by the DOJ pursuant to Section 12083.

      iv.    Persons whose licensed premises are outside this state who are licensed as dealers or collectors

18           of firearms pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto;

19   v.     Persons licensed as collectors of firearms pursuant to Chapter 44 (commencing with Section 921)

20           of Title 18 of the United States Code and the regulations issued pursuant thereto whose licensed premises are within this state who has a current certificate of eligibility issued to him or her by

21           the DOJ;

      vi.    Any "handgun ammunition vendor": i.e., a person, firm, corporation, dealer, or any other

22           business enterprise that is engaged in the retail sale of any handgun ammunition, or that holds itself out as engaged in the business of selling any handgun ammunition;

23   vii.    A consultant or evaluator who, in the course of his or her profession is loaned firearms from a

24           person licensed pursuant to Chapter 44 (commencing with Section 921) of Title 18 of the United States Code and the regulations issued pursuant thereto, for his or her research or evaluation, and has a current certificate of eligibility issued to him or her pursuant to Section 12071;

25   d.  For such exempted persons, perform identification and age verification check, document that information

26       used to verify delivery and keep that information tied to the package's records to substantiate that the delivery was made to an exempted person;

27   e.  For non-exempted persons, perform an identification check to verify that the recipient is the person identified in the requisite licenses/certificates/permits, when required for such packages and check the

28       age of the recipient;

     f.  Obtain a signature from the addressee of such packages; and
     g.  Make provisions for any such packages that the carriers determine cannot lawfully be delivered.

1  relief and a permanent injunction against enforcement of Section 12318 altogether.[23]

2
### 1.   The Threat of Enforcement Of The Challenged Provision Constitutes
3         Irreparable Harm

4      The Challenged Provision has already been enacted and becomes effective February 1, 2011.

5  Defendant Lindley continues to warn that "Non-face-to-face transfers, such as internet transactions and

6  mail order deliveries are prohibited . . . misdemeanor[s]."  (Ex. 1. )

7      The threat that this preempted law will be enforced against the Plaintiffs[24] and their members is

8  an irreparable harm that makes injunctive relief appropriate.  That was precisely the conclusion that the

9  Supreme Court reached in analogous circumstances in *Morales*.  There, the specific issue was whether

10  airlines were entitled to declaratory and injunctive relief against the use of state consumer protection

11  laws to enforce National Association of Attorney General guidelines concerning advertising of airline

12  fares.  *See Morales*, 504 U.S. at 378.  In concluding that injunctive relief was appropriate, the Court

13  relied on the fact that "the attorneys general of seven States . . . had  made clear that they would seek to

14  enforce the challenged portions of the guidelines" and that the consumer protection statutes at issue

15  authorized escalating civil penalties for violations.  *Id.* at 381.  As a result, the airlines challenging the

16  guidelines "were faced with a Hobson's choice:  continually violate the . . . law and expose themselves

17  to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law

18  during the pendency of the proceeding and any further review."  *Id.*  (footnote omitted).  The Court

19  concluded that the prospect of an imminent state suit to enforce the challenged law "supplies the

20  necessary irreparable injury" for an injunction.  *Id.* at 382 (citing *Pub. Serv. Comm'n of Utah v. Wycoff*

21  *Co.*, 344 U.S. 237, 240-41 (1952)).

22      Here, as in *Morales*, the threatened enforcement of the Challenged Provision constitutes

23  irreparable harm warranting injunctive relief.  *Morales* establishes that the threat of enforcement of the

24  Challenged Provision constitutes irreparable harm to the Associations' members making injunctive relief

25
_____

26      [23]  *See Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987) (standard for a permanent
injunction differs from standard for preliminary injunction because actual success on the merits must be
27  demonstrated to obtain a permanent injunction).

28      [24]  It is important to note that enforcement can be either directly via Section 12318, or indirectly, through
collateral provisions, such as Business and Professions Code § 17200, et seq, which prohibits any unfair,
unlawful, or fraudulent business practice.

1    appropriate.  504 U.S. at 381-82;  *see also Abbot Labs. v. Gardner*, 387 U.S. 136, 152-53 (1967) (pre-

2    enforcement injunctive relief appropriate where challenged laws force plaintiffs to choose between

3    compliance with the law and "serious criminal and civil penalties"); *Ex parte Young*, 209 U.S. 123, 167

4    (1908) (injunction properly issued where "the injury complained of is the threatened enforcement of

5    suits, civil or criminal, to enforce the act").

6 / 7
### 2.       The Constitutional Violation Is an Additional Factor Reinforcing the Existence of Irreparable Harm

8           In addition to the imminent enforcement of the Challenged Provision, its unconstitutionality

9    itself reinforces the irreparable harm carriers and drivers face.  *See Elrod v. Burns*, 427 U.S. 347, 373

10   (1976) (irreparable injury shown where "First Amendment interests were either threatened or in fact

11   being impaired at the time relief was sought"); *see also Lainer v. City of Boston*, 95 F. Supp. 2d 17, 21

12   (D. Mass. 2000) (continued enforcement of allegedly unconstitutional police department arrest policy

13   posed risk of irreparable injury).  Indeed, in granting summary judgment and a permanent injunction

14   against enforcement of the preempted statutory scheme at issue in *Flores-Galarza*, the district court held

15   that "the ongoing deprivation of UPS' Constitutional rights which results from having to comply with

16   the unlawful [statutory] scheme . . . is itself 'a factor in assessing irreparable injury.' "  *Flores-Galarza I*,

17   210 F. Supp. 2d at 44; *see also Trans World Airlines, Inc. v. Mattox*, 897 F.2d 773, 784 (5th Cir. 1990)

18   (affirming preliminary injunction against enforcement of guidelines eventually held preempted in

19   *Morales*, holding that their enforcement "would violate the Supremacy Clause, causing irreparable injury

20   to the airlines.").

21   ### C.       A Claim for Declaratory Relief Can Be Granted

22           Count Two of the Complaint seeks to have the Court resolve an actual controversy among the

23   parties as to whether the Challenged Provision is preempted by the FAAAA under the Supremacy

24   Clause.  (Compl. ¶¶ 45-51.)   The Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., empowers this

25   Court to issue a declaratory judgment "[i]n a case of actual controversy within its jurisdiction . . .

26   whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  Here, the "actual controversy"

27   requirement is plainly satisfied.  The FAAAA preempts not just the enforcement of provisions such as

28   the Challenged Provision, but the mere *enactment* of such a provision.  *See* 49 U.S.C. § 14501(c)(1) ("a

1    State . . . may not *enact* or enforce a law . . . ") (emphasis added)).  Again, "[t]he mere existence of

2    improper regulations implicates preemption."  *Fed. Express Corp. v. Cal. Pub. Utils. Comm'n*, No.

3    87-4891, 1993 U.S. Dist. LEXIS 13830, at *13-14 (N.D. Cal. Sept. 23, 1993).  Thus, an actual

4    controversy exists warranting the issuance of declaratory relief.

5    **IV.    PLAINTIFFS HAVE ALLEGED A RIPE CONTROVERSY**

6         Defendants allege that this case is not ripe for controversy because the Challenged Provision does

7    not take effect until February 1, 2011.  An actual controversy, however, exists among the parties as to

8    whether the Challenged Provision is preempted, and because the Plaintiffs have alleged and established

9    that the Challenged Provision has been preempted since the day it was enacted in 2009 and enforcement

10   has been and is still being threatened by the Defendants via publication of the "Information Bulletin."

11        Again, the Declaratory Judgment Act, 28 U.S.C. §§ 2201 et seq., empowers this Court to issue a

12   declaratory judgment "[i]n a case of actual controversy within its jurisdiction . . . whether or not further

13   relief is or could be sought."  28 U.S.C. § 2201(a).  Here, the "actual controversy" requirement is plainly

14   satisfied.  The FAAAA preempts not just the enforcement of provisions such as the Challenged

15   Provision, but the mere enactment of such a provision.  *See* 49 U.S.C. § 14501(c)(1) ("a State . . . may

16   not *enact* or enforce a law . . . ") (emphasis added).)  "The mere existence of improper regulations

17   implicates preemption."  *Fed. Express Corp.*, 1993 U.S. Dist. LEXIS 13830, at *13-14.

18   **V.    PLAINTIFFS' CLAIMS ARE NOT BARRED BY SOVEREIGN IMMUNITY**

19        The Eleventh Amendment does not bar suit against a state or political subdivision if Congress

20   abrogates a state's constitutional immunity.  *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 55-56

21   (1996).  Congress abrogates a state's constitutional immunity if it:  (1) "unequivocally expressed its

22   intent to abrogate the immunity"; and (2) "has acted pursuant to a valid exercise of power."  *Id.* at 55. As

23   detailed in Part III of this Memorandum, Congress, via the FAAAA, clearly waived Eleventh

24   Amendment immunity regarding the limited  issue of prohibiting "a state [or] political subdivision

25   thereof" from enacting or enforcing laws, regulations, or other provisions having the force and effect of

26   law relating to a price, route, or service of a carrier.  49 U.S.C. § 14501(c)(1).

27        With regard to Defendant Lindley, it is settled law "that the Eleventh Amendment does not bar

28   an action seeking prospective relief from enforcement of an unconstitutional statute."  *S.F. County*

1  *Democratic Cent. Comm. v. Eu*, 826 F.2d 814, 825 (9th Cir. 1987) (citing *Ex parte Young*, 209 U.S.

2  123), *aff'd*, 489 U.S. 214 (1989).  Thus, the Eleventh Amendment would generally present no barrier to

3  Plaintiffs' request for declaratory and injunctive relief.  *See id.*  Defendants argue that this exception

4  does not apply because Defendant Lindley has no "connection with the enforcement of the act" to avoid

5  making that official a mere representative of the state.  *Ex parte Young*, 209 U.S. at 157.  This court

6  should have no difficulty, however, concluding that the requisite "connection" exists here, as it did in

7  *Culinary Workers Union, Local 226 v. Del Papa*, 200 F.3d 614, 619, where it was determined that a

8  letter from the Attorney General was sufficient connection to overcome Eleventh Amendment immunity.

9  *See also Socialist Workers Party v. Leahy*, 145 F.3d 1240, 1246 (11th Cir. 1998) ("despite [defendants']

10  disavowal of their authority to enforce . . . we find . . . that a credible threat of application remains");

11  *Ams. for Med. Rights v. Heller*, 2 F. Supp. 2d 1307, 1313 (D. Nev. 1998) (finding adequate threat of

12  prosecution by Secretary of State even though actual enforcement must be initiated by local district

13  attorney); *Artichoke Joe's v. Norton*, 216 F. Supp. 2d 1084, 1111 (E.D. Cal. 2002) (holding:

14

15  > Plaintiffs may also rely on the *Young* doctrine to pursue their claims against the Attorney
General and the Director of the Division of Gambling Control to enjoin enforcement of
the Penal Code provisions. For the same reasons that the claim against the Attorney

16  > General and the Director satisfies the Article III causation requirement, the claim also
meets the causal connection requirement under *Young*:  The Attorney General and the

17  > Director have repeatedly warned plaintiffs not to violate the relevant Penal Code
provisions barring Las Vegas style gambling. Thus, unlike in *Long v. Van de Kamp*, 961

18  > F.2d 151 (9th Cir. 1992) and *Southern Pacific Transp. Co. v. Brown*, 651 F.2d 613 (9th
Cir. 1980), the Attorney General and the Director are not being sued solely because they

19  > have general supervisory responsibilities to enforce state law. To the contrary, as in
*Culinary Workers Union, Local 226*, they have made specific warnings of criminal

20  > prosecution and administrative action. Therefore, the Attorney General and the Director
have a sufficient causal connection to the enforcement of the statute for purposes of

21  > *Young*. )

22  As referenced above, Defendant Lindley, as the Acting Chief of the Bureau of Firearms,

23  continues to threaten enforcement via continued publication of their "Information Bulletin." (*See* Ex 1.)

24  *See also Rowe*, 552 U.S. 364 (United States Supreme Court unanimously held Maine Attorney General

25  liable for preemption on law nearly identical to the Challenged Provision); *Morales*, 504 U.S. 374

26  (Attorney General held liable for preemption).

27  / / /

28  / / /

1
2

## VI.   THE CALGUNS FOUNDATION, INC. AND THE NATIONAL RIFLE ASSOCIATION, INC. HAVE STANDING

3      The Firearm Associations have standing to sue because:  (1) their members would have standing

4 to sue; (2) protecting their members' access to ammunition is germane to the Associations' purposes;

5 and (3) neither the claim asserted nor the relief requested requires participation of individual members.

6 *United Food & Commercial Workers Union Local 751 v. Brown Group, Inc.*, 517 U.S. 544, 553 (1996).

7           **A.      The Firearm Association Members Have Standing**

8      An associational member has standing where the member has suffered an injury in fact that is

9 causally related to the challenged conduct, and where the injury will likely be redressed by a favorable

10 decision. *United Food & Commercial Workers*, 517 U.S. at 551.  Plaintiffs need only establish that such

11 injury is "fairly traceable" to the challenged conduct.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560

12 (*quoting Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976)).  Here, Firearm Association

13 members will suffer, not only as drivers, but also as a result of decreased availability and increased costs

14 of ammunition due to the Challenged Provision's burdens on common carriers and drivers.  (Compl.  ¶¶

15 33, 36, 41.)   This causal connection supporting the standing of Firearm Associations' members is

16 particularly compelling here, where a government restriction imposed on one party causes harm to

17 another party and the statute relied on was intended to prevent the resulting harm.

18
19
20

> [W]hen a governmental prohibition or restriction imposed on one party causes specific harm to a third party, harm that a constitutional provision or statute was intended to prevent, the indirectness of the injury does not necessarily deprive the person harmed of standing to vindicate his rights.

21 *Warth v. Seldin,* 422 U.S. 490, 505 (1975) (emphasis added).

22      While Defendants argue that Section 12318 impacts only carriers in that it requires they change

23 their policies regarding the shipping of "handgun ammunition," this will necessarily increase the cost of

24 shipping ammunition to and within California and ultimately reduce availability.  (Compl.  ¶¶ 33, 36,

25 41.)  And this is precisely the type of harm Congress sought to prevent when it passed the FAAAA.  In

26 fact, the bill's sponsor stated that preemption of "State regulation of price, routes and services of motor

27 carriers" was "[i]n the interest of saving the American consumer billions of dollars annually."  140

28 Cong. Rec. H7116 (daily ed. Aug. 8, 1994) (statement of Rep. Mineta) (emphasis added).  Because

1  Congress sought to limit the escalating costs associated with state regulation of freight transportation,

2  and passed onto American consumers, the increased costs associated with shipping ammunition to

3  California and passed onto ammunition consumers is a "harm that a . . . statute was intended to prevent."

4  *Warth*, 422 U.S. at 505; 140 Cong. Rec. H7116.   Accordingly, Association members have sufficiently

5  established a claim for an injury that is at least "fairly traceable" to Defendants' actions. *Lujan*,  504

6  U.S. at 560.

7       The otherwise certain decrease in availability of ammunition and concurrent price increases will

8  be avoided altogether if Section 12318 is declared unconstitutional.

9       **B.     Firearm Associations' Interest in Protecting its Members' Ability to Access
              Ammunition is Germane to Its Purpose**

10      Firearm Associations' purposes include protection of the right of citizens to have firearms and

11  ammunition for the lawful defense of their families, persons, and property.  (Compl.  ¶¶ 8-9.)  As

12  explained, *supra*, the FAAAA aims not only to protect common carriers, but also to control the

13  escalating costs of freight transportation in the interest of protecting American consumers.  Because of

14  Section 12318, Firearm Association members' access to ammunition will greatly decrease and the cost

15  of ammunition will necessarily increase as common carriers alter their policies in order to comply with

16  the new law.   And, because Section 12318 will drive up the costs, reduce availability, and hinder the

17  ability to acquire "handgun ammunition" in California, the issues involved in the present action are

18  germane to the interests of the Associations and their members.

19      **C.     Relief Does Not Require the Participation of the Associations' Individual Members**

20      It is well-settled that suits brought by organizations for only declaratory and injunctive relief do

21  not generally require the participation of individual members. *Warth*, 422 U.S. at 515.  Plaintiffs seek

22  only declaratory and injunctive relief; as such, no participation is required of individual Association

23  members, and the Associations rightfully assert associational standing to sue on behalf of their members.

24  **VII.   FOLSOM SHOOTING CLUB HAS STANDING**

25      FSC plead that they will have a burden of being unable to establish their position within the

26  exempted class, the requirement of having employees over 21 years of age on hand to receive

27  ammunition, and requirement to provide "bona fide evidence of identity" in lieu of being unable to prove

28  exempted status.  (Compl.  ¶¶ 38-39.)  Most importantly, FSC is directly harmed by the likely decrease

1  in availability of ammunition and increase in the price of ammunition caused squarely by the enactment

2  of section 12318 and the resultant burdens placed on common carriers.  This is a "harm that a . . . statute

3  was intended to prevent."  *See Warth*, 422 U.S. at 505; 140 Cong. Rec. H7116.  As such, FSC also has

4  standing.

5  **VIII.   THE COURT SHOULD NOT STAY THE ACTION PENDING RESOLUTION OF**
   ***PARKER V. STATE OF CALIFORNIA, ET AL.***

6         Defendants argue that this case should be stayed pending a decision in the case of *Parker v. State*

7  *of California* before the Superior Court of California, County of Fresno.[25]  *Parker* challenges the

8  definition of "handgun ammunition" as being unconstitutionally vague under the Fourteenth Amendment

9  of the United States Constitution.  *See* Complaint at  ¶¶ 88-103, *Parker v. State of California*, No. 10-

10  0216 (filed June 17, 2010).  It does not allege a preemption violation of the FAAAA,[26] nor does it relate

11  to the Supremacy Clause.[27]

12         As Defendants note, however, a "stay should not be granted unless it appears likely the other

13  proceedings will be concluded within a reasonable time in relation to the urgency of the claims presented

14  to the court."  *Landis v. N. Am. Co.*, 299 U.S. 248,  255 (1936).  Defendants' request is based upon these

15  presumptions:  (1) that the definition of "handgun ammunition" is found by the court to be vague; and

16  (2) the likelihood that the vague definition would render the entirety of AB 962 unconstitutional.

17  Defendants make no argument that the Plaintiffs in the *Parker* matter are likely to prevail, that the statue

18

19      [25]  The complaint in *Parker* is attached as Exhibit "A" to Defendants' Request for Judicial Notice, filed

20  concurrently with their Motion to Dismiss and Points and Authorities in support thereof.

21      [26]  While clarification of the meaning of "handgun ammunition," whether done via courts, statutorily, or

22  by regulation, would assist carriers and drivers in identifying which ammunition is subject to the regulation, it is
    but one of many factors that the carriers and drivers must consider in the implementation of policies and
    procedures that must be developed to avoid liability for the delivery of "handgun ammunition."

23

24      [27]  Plaintiffs agree that a district court has the discretionary power to control the disposition of the cases
    on its docket "in a manner which will promote economy of time and effort for itself, for counsel, and for the

25  litigants."  *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962); *see Landis v. N. Am. Co.*, 299 U.S. 248, 254
    (1936).  And, Plaintiffs agree that how these objectives can be achieved "calls for the exercise of judgment,

26  which must weigh competing interests and maintain an even balance."  *Landis*, 299 U.S. at 254-55; *see Lockyer
    v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) ("Where it is proposed that a pending proceeding be stayed,

27  the compelling interests which will be affected by the granting or refusal to grant a stay must be weighted.")
    Such competing interests include: "the possible damage which may result from the granting of a stay, the

28  hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice
    measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be
    expected to result from a stay."  *CMAX*, 300 F.2d at 268.

1   is likely to be found unconstitutional, or that the law will not otherwise go into effect on February 2011.

2        Policies and procedures are not made instantaneously in a vacuum.  Carriers and drivers have

3   *until* the law goes into effect in February, 1, 2011, to develop the necessary procedures and policies so as

4   to avoid liability under the provisions of AB 962 for the delivery of " handgun ammunition."  In other

5   words, to be prepared to comply with AB 962 on February 11, 2011, carriers and drivers face the burden

6   of compliance prior to that deadline. Unless and until the delivery provisions of Section 12318 are barred

7   from being enforced, legislatively modified, or declared unconstitutional, carriers and drivers will be

8   obligated to prepare for its imminent and unchanged effective date, thereby affecting their rates, routes,

9   and services.  Should this matter be stayed, carriers and drivers ability to determine the validity of

10  Section 12318 insufficient time to create and implement policies and procedures prior to the February

11  2011 effective date will be materially affected.

12       *Landis* cautions that "if there is even a fair possibility that the stay . . . will work damage to

13  someone else," the party seeking the stay "must make out a clear case of hardship or inequity."  *Id.* at

14  255; *see also Lockyer*, 398 F.3d at 1112.  "[B]eing required to defend a suit, without more, does not

15  constitute a 'clear case of hardship or inequity' within the meaning of *Landis*."  *Lockyer*, 398 F.3d at

16  1112.  On the facts of this case, neither the balance of hardships between the parties, nor the prospect of

17  narrowing the factual and legal issues in the other proceeding, justifies a stay.

18                                    **CONCLUSION**

19       For all the forgoing reasons, Plaintiffs request that this court deny Defendants' request to dismiss

20  the complaint as well as deny Defendants' request to stay this matter pending *Parker v. State of*

21  *California*. To the extent that the Complaint is defective, Plaintiffs request leave to amend the

22  Complaint to properly plead facts and parties as deemed necessary.

23  Dated: November 4, 2010

24  **MICHEL & ASSOCIATES, P.C.**                    **DAVIS & ASSOCIATES**

25  s/C.D. Michel                                     s/ Jason A. Davis
    C.D. Michel                                       Jason A. Davis
26  Attorney for Plaintiff National Rifle Association, Attorney for Plaintiffs Owner-Operator
    Inc.                                              Independent Drivers Association, Inc., Erik
27                                                    Royce, Brandon Elias, Folsom Shooting Club,
                                                      Inc., and The Calguns Foundation, Inc.
28

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| OWNER-OPERATOR INDEPENDENT DRIVERS ASSOCIATION, INC., ERIK ROYCE, BRANDON ELIAS, FOLSOM SHOOTING CLUB, INC., THE CALGUNS FOUNDATION, INC., and NATIONAL RIFLE ASSOCIATION, INC., <br><br> Plaintiffs, <br><br> vs. <br><br> STEVE LINDLEY; THE STATE OF CALIFORNIA; THE CALIFORNIA DEPARTMENT OF JUSTICE; DOES 1-10 <br><br> Defendants. | ) Case No.: 10-CV-02010-MCE-KJM <br> ) <br> ) **CERTIFICATE OF SERVICE** <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

IT IS HEREBY CERTIFIED THAT:

I, the undersigned, am a citizen of the United States and am at least eighteen years of age.  My business address is 180 E. Ocean Blvd., Suite 200, Long Beach, California, 90802.

I am not a party to the above-entitled action. I have caused service of:

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE COMPLAINT, OR IN THE ALTERNATIVE, TO STAY THE ACTION**

on the following party by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

| | |
|---|---|
| EDMUND G. BROWN JR., Attorney General <br> ZACKERY P. MORAZZINI, Supervising Deputy Attorney General <br> PETER A. KRAUSE, Deputy Attorney General <br> 1300 I Street, Suite 125 <br> P.O. Box 944255 <br> Sacramento, CA 94244-2550 | Telephone: (916) 324-5328 <br> Fax: (916) 324-8835 <br> E-mail: Peter.Krause@doj.ca.gov |

I declare under penalty of perjury that the foregoing is true and correct.  Executed on November 4, 2010.

                              /s/ C.D. Michel
                              C. D. Michel
                              Attorney for Plaintiff National Rifle
                              association, Inc.